COONROD v. KELLY et al.

(Circuit Court of Appeals, Third Circuit. December 5, 1902.)

No. 5.

1. EQUITY—SUFFICIENCY OF EVIDENCE TO SUPPORT BILL.

Where answer under oath was not waived, and the answers so made were responsive to the bill, and were supported by the testimony of the defendants, who were called as witnesses by complainant, the force of such testimony is not overthrown by the fact that it is improbable or open to suspicion under the peculiar facts and circumstances of the case, and the facts alleged in the bill can only be established by affirmative evidence, either direct or circumstantial.

2. MORTGAGES—FAILURE TO RECORD—EFFECT UNDER NEW JERSEY STATUTE.

Under Gen. St. N. J. p. 2106, § 22, which makes every mortgage void against a subsequent bona fide mortgagee for a valuable consideration without notice thereof, unless it is lodged for record at or prior to the time

of the lodging for record of the subsequent mortgage, a purchaser of a mortgage having priority of record is entitled to rely on the priority of lien which such record gives, and is not chargeable with notice from the record that a mortgage subsequently recorded was in fact prior in time because it bears a prior date, no presumption arising from the facts so appearing that it was actually delivered on the day of its date.

**3.** SAME—RIGHTS OF ASSIGNEE.

The assignee of a mortgage takes all the rights of his assignor, and if, in the hands of the assignor, it was entitled to priority over another mortgage under the statute because of its priority of record, and of the fact that it was taken by the assignor for a full consideration, and without notice that the other mortgage had in fact been previously executed, it has the same priority in the hands of the assignee, although he may have taken it with knowledge of the facts.

**4.** SAME—RIGHT OF SUBROGATION TO LIEN OF CANCELED MORTGAGE—INNOCENT ASSIGNEE OF INTERVENING MORTGAGE.

Complainant made a loan to an owner of property, taking a mortgage therefor. There was a prior mortgage on the property, which he paid off from the proceeds of the loan, but before doing so, and recording his mortgage, several days elapsed, during which a third mortgage had been given by the mortgagor and recorded, which, under the statute, gave it priority over complainant's. After the first mortgage had been canceled the third mortgage, which was then first of record, was sold to defendant, who bought in good faith and in reliance on the record. *Held*, that complainant was negligent in not examining the record before canceling the first mortgage, and that as against defendant he was not entitled to be subrogated to the lien of such mortgage.

Appeal from the Circuit Court of the United States for the District of New Jersey.

Joseph Colt, for appellant.

Joseph Cross, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from a decree of the circuit court of the United States for the district of New Jersey (113 Fed. 378), in a suit in equity brought by the appellant, by bill filed against the above-named defendants.

The essential facts, as disclosed by the pleadings and testimony, are that, some time prior to May 1, 1899, George Booth, one of the defendants, who was doing business as agent of his wife, Ella Booth, another of defendants, became indebted to William H. Coonrod, the complainant, to the amount of about $2,400. Ella Booth at that time owned the real estate described in the bill, situate in North Plainfield, Somerset county, N. J., which was subject to a mortgage for $10,000, held by the Mutual Life Insurance Company of New York, on which, at the time of the transactions herein set forth, there was due $5,000 of principal and $102 of interest. On or about May 1, 1899, it was arranged between the Booths and Coonrod that a mortgage for $10,000 on this property of Ella Booth should be given to Coonrod, and that Coonrod should pay off the amount due on the mortgage to the Mutual Life Insurance Company, cancel the debt of $2,400 due to Coonrod from the Booths on book account, and advance them $2,498

¶ 4. Subrogation to rights of mortgagee, see note to Rachal v. Smith, 42 C. C. A. 304.

in cash, the balance necessary to make up the $10,000. A bond for the amount of $10,000, in favor of Coonrod, and a mortgage to secure the same upon the property of Ella Booth, above mentioned, were executed, in the absence of Coonrod, by George and Ella Booth, on May 1, 1899, before a notary public. This bond and mortgage were afterwards, on the 3d of May, 1899, delivered to the said Coonrod, in the office of his attorneys, Colt & Howell, in Newark, N. J. At the time of the delivery, a search of the property mortgaged, certified by one Badgley, attorney or agent of the Booths, up to May 2, 1899, was exhibited to the appellant. This search showed that the property in question was clear of liens, except the stated mortgage to the Mutual Life Insurance Company for $10,000, as to which it was noted that $5,000 of the principal had been paid. It was also stated by the parties mortgagors at the time of the delivery to Coonrod, that the mortgage delivered would be a first lien on the property described in it, after the cancellation of the mortgage to the Mutual Life Insurance Company. The delivery of the bond and mortgage by Booth to Coonrod was made shortly after 11 o'clock a. m. on the 3d of May, 1899. About 2 o'clock, or between 1 and 2, of the same day, the Booths went to the office of Frederick J. Howlett, one of the defendants, and, pursuant to an arrangement previously made, executed and delivered to the said Howlett a mortgage for $8,000, upon the same premises which were described in the Coonrod mortgage.

It is in testimony, and not disputed, that immediately after the delivery of the Coonrod mortgage, it was handed by Coonrod to Mr. Howell, his attorney, in order that it might be recorded, and that Mr. Howell, on the same day, May 3, 1899, mailed it to the clerk of Somerset county for that purpose. On the 5th of May, he received it back, with a letter dated May 4, 1899, stating that the mortgage was not sufficiently stamped, and that on that day, May 5th, Mr. Howell stamped the mortgage and remailed it to the clerk of Somerset county, with his check for two dollars and a half, the amount of recording fee. It was received and recorded by the clerk on May 6, 1899. The mortgage on the same property subsequently delivered to Howlett on the said 3d of May, was taken by Howlett personally, in the afternoon of that day, to the office of the clerk of Somerset county, and lodged for record as of that date.

On the day on which the transaction was closed, May 3, 1899, Mr. Howell testifies that as attorney for Coonrod, he deposited the draft for $5,000 and a check for $102 in a national bank of Newark, and drew Colt & Howell's check for $5,102, to the order of the Mutual Life Insurance Company of New York, and having had the same certified, sent one of his clerks with it to New York, to pay off and take up the mortgage held by that company. This was done, and the bond and mortgage held by the Mutual Life Insurance Company was returned. The mortgage was then forwarded by Mr. Howell to the clerk of Somerset county for cancellation, and it appears by the clerk's certificate that the said mortgage of the Mutual Life Insurance Company was canceled of record on May 8, 1899.

Howlett held the $8,000 mortgage until June 30, 1899, when he made an assignment thereof to the Dime Savings Institution of Plainfield,

N. J., one of the defendants. The bill charges, upon information and belief, that Howlett never paid or advanced to George Booth and Ella Booth, his wife, any moneys whatever on account of the $8,000 mortgage made to him, and that the making, execution and delivery of said mortgage was a scheme devised by the Booths and Howlett to place upon the records an incumbrance in a secret manner, and for the purpose of defrauding either the complainant or such person as might subsequently become assignee of the said Howlett mortgage; that neither of them ever made any disclosure of the facts in relation to the making of the said $8,000 mortgage, and that complainant discovered it by accident in the latter part of November, 1899. Complainants, therefore, insist that said mortgage never had any validity in the hands of the said Howlett, and was never a lien upon said premises, and that the Dime Savings Institution of Plainfield acquired no better security or lien than Howlett, and that, therefore, said' mortgage is invalid in the hands of the said savings institution as against complainant's mortgage.

The bill also charges, upon information and belief, that the Dime Savings Institution of Plainfield had full knowledge and lawful notice that the mortgage made by the Booths to complainant was executed and delivered prior to the mortgage made by them to said Howlett, and that said savings institution had lawful notice that complainant's said mortgage was a first and paramount lien upon said lands. The bill further charges that, inasmuch as the moneys advanced by complainant to the said Booths, on the said $10,000 mortgage, or a portion thereof, were used for the purpose of taking up and paying off the prior mortgage on said lands held by the Mutual Life Insurance Company of New York, complainant is and should be subrogated to the rights of the said Mutual Life Insurance Company under the said mortgage, and by virtue thereof has acquired in equity and now holds the same rights in said property, and the same lien thereon, as was held by the said Mutual Life Insurance Company at the time complainant took up and paid off said mortgage. And the bill further charges that, by virtue of the premises, complainant now holds a first and paramount lien upon the said property, by virtue of his own mortgage and of the mortgage held by the said Mutual Life Insurance Company.

The bill prays: (1) That an account may be taken, under the direction of the court, of the amount due upon complainant's said mortgage; (2) that defendants, or some of them, may be decreed to pay to complainant the amount found due, with interest thereon, by a short day to be appointed by the court, and that in default thereof, a foreclosure may be decreed; (3) that the said premises may be sold by order of the court, and out of the proceeds of sale complainant may be paid the amount found due upon his said mortgage, with interest thereon, and the costs of suit. The bill then prays that defendants may answer the bill fully and particularly, and sets forth certain interrogatories which it prays may be answered by George Booth and Ella, his wife, and certain other interrogatories which it prays may be answered by Frederick J. Howlett, and certain other interrogatories which it prays may be answered by the Dime Savings Institution of Plainfield. The bill contains no waiver of an answer under oath.

Separate answers were thereupon filed under oath in due course by George Booth and Ella Booth, by Frederick J. Howlett and by the Dime Savings Institution of Plainfield, respectively.

The complainant also called as his witnesses, George Booth and Frederick J. Howlett, defendants, and examined them particularly as to the circumstances under which the mortgages were given to Coonrod and Howlett, respectively. Booth testified as to the making and delivery of the mortgage to Coonrod substantially as set forth in the bill, and that he afterwards, on the same day, in pursuance of a previous arrangement, executed and delivered the mortgage for $8,000 to Howlett; that he had told Howlett on a former occasion that the only lien on the property mortgaged was that created by the mortgage of the Mutual Life Insurance Company, and that $5,000 on that mortgage had been paid, and that Howlett's mortgage was to be second to that and to that alone. He also testified that Howlett knew nothing of the Coonrod mortgage previously executed and delivered on that day, and that Howlett paid to him, after the delivery of the mortgage, and after Howlett had recorded the same, the full amount of the consideration named, to wit, $8,000; that the same was paid in the following manner,—$7,000 in gold, $300 in greenbacks, and $700 credited to a debt which Booth owed to Howlett for commissions and other transactions; that the payment was made in the house of Howlett, in Montclair, about 7 o'clock in the evening, which was after his return from the clerk's office, in Somerset county, where he had lodged the mortgage for record.

The complainant also called as his witness, Frederick J. Howlett, who testified to the same effect as Booth, to wit, that he paid the full consideration named in the mortgage, in his house about 7 o'clock in the evening, after he came back from recording the mortgage; that it was paid in gold, notes and by a credit in the manner testified to by Booth. In reply to further questions, he testified that he had accumulated the gold to an amount something over $8,000 in his house through a period of several years. He also averred his good faith in the transaction, and testified that he had no knowledge from Booth, or otherwise, of the Coonrod mortgage; that he examined the records when he took his mortgage to Somerset county for record, and found the mortgage of the Mutual Life Insurance Company the only mortgage prior to his own; that he expected to find it there, as he had previously found it there, and that Mr. Booth had told him that there was such a mortgage as that; that when he offered the mortgage to the Dime Savings Institution, he represented it to be a first mortgage, the mortgage of the Mutual Life Insurance Company having, in the meantime, been canceled. This was substantially the only testimony offered by the complainants, bearing directly upon the question as to whether Howlett was an innocent mortgagee for full consideration and without notice.

The bill, as already stated, did not waive an answer under oath by the defendants, and the answers to the bill and to the interrogatories therein propounded were responsive, and were, in general tenor and effect, the same as the testimony given by Booth and Howlett, when called by the complainant, to which reference has just been made.

In other words, the testimony supports the answers in every respect. Being uncontradicted, these answers themselves are conclusive. The same rule applies to the answer of the savings institution, which is also not only uncontradicted, but clearly supported by the testimony in its behalf.

The testimony on the part of the Dime Savings Institution, the assignee of the Howlett mortgage, is to the effect that, when the mortgage was offered to them, in due course of business the property was examined by a committee of the directors, and an examination of the title was ordered to be made by its attorney, who afterwards reported that such examination had been made, and that the mortgage offered was a first lien upon the property described. The certificate of search set forth the Coonrod mortgage, dated May 1, 1899, and recorded May 6, 1899, as also the mortgage of the Mutual Life Insurance Company, canceled of record on May 8, 1899. This evidence clearly shows that it had no other knowledge than that stated as acquired from the records of Somerset county, and that it was believed by those controlling its affairs, that the Howlett mortgage was a first lien on the property named therein, under the statute of New Jersey relative to the record of mortgages. This statute is as follows:

"That every deed of mortgage, or conveyance in the nature of a mortgage, of or for any lands, tenements or hereditaments, which shall have been made and executed after the first day of January, in the year of our Lord one thousand eight hundred and twenty one, or shall hereafter be made and executed, shall be void and of none effect against a subsequent judgment creditor, or bona fide purchaser, or mortgagee, for a valuable consideration, not having notice thereof, unless such mortgage shall be acknowledged or proved according to law, and recorded, or lodged for that purpose with the clerk of the court of common pleas of the county in which such lands, tenements or hereditaments are situated, at or before the time of entering such judgment, or of recording or lodging with the clerk as aforesaid, the said mortgage or conveyance to such subsequent purchaser or mortgagee; provided, nevertheless, that such mortgage as between the parties and their heirs be valid and operative." Gen. St. N. J. p. 2106, § 22.

The question, then, for this court, as was the question for the court below is, (1) Was the Howlett mortgage made bona fide for a valuable consideration? and (2) was Howlett, at the time of the delivery of the mortgage and the payment of the consideration, without notice of the mortgage executed and delivered a few hours previously by the same mortgagors to Coonrod?

Undoubtedly, the burden was upon the complainant, Coonrod, to establish to the satisfaction of the court one or both of these averments of his bill. This he has been unable to do. He has been compelled to rely upon the testimony of Booth and Howlett, the mortgagor and mortgagee, made defendants by the bill. By this testimony he is bound, unless he can, by other witnesses and evidence, direct or circumstantial, show that their testimony is false. A complainant, who places the defendant on the stand, is not bound to refrain from contradicting him, where the exigency of the case demands it. In the case before us, however, there has been no testimony adduced to contradict that of Booth and Howlett. Whatever of improbability or suspicion may attend it, owing to the peculiar facts or circumstances of the case, it is not sufficient to countervail the effect of the direct testi-

mony brought out by complainant from the defendants whom he called upon to testify. The fact that the Coonrod mortgage does not come within the exception of the statute,—that is, that it was not placed upon record in the proper office for recording deeds, at the time, or prior to the recording of the Howlett mortgage,—is indisputable, and the priority of record must control the priority of lien, as between these two mortgagees.

The complainant, however, further contends that the savings institution had notice of the Coonrod mortgage, before it took the assignment of the Howlett mortgage, and before it paid its money, and that this fact was enough to put the savings institution upon inquiry in regard to the Coonrod mortgage. It is not contended that the savings institution had actual notice of the facts in regard to the execution and delivery of the Coonrod mortgage, or that it was a participant in any actual fraud. The sole contention is, that its attorney, in making a search of the records for the condition of the Booth title, prior to its taking the assignment of the Howlett mortgage, or paying a consideration therefor, must have discovered upon the record the Coonrod mortgage, dated May 1, 1899, and recorded May 6, 1899, three days after the record of the Howlett mortgage. As to this contention, we need only say that the counsel who made the search, and the savings institution, were justified in standing upon the priority of lien that presumptively attaches to priority of record, and when complainant failed to show that the mortgagee of the mortgage, of which it took the assignment, had not paid a valuable consideration, or that he had notice of this prior mortgage, its rights under the assignment were secure, and it stood in the shoes of the mortgagor. Assuming that the presumption of innocence on the part of Howlett, as mortgagee of the subsequent mortgage, either as to the payment of valuable consideration or as to notice, has not been overthrown, as in this case it has not been, then, even if the savings institution, upon inquiry, had discovered the real fact as it existed, to wit, that the Coonrod mortgage had been delivered a few hours prior to the execution and delivery of the Howlett mortgage, it would still hold the title of its innocent assignor.

It should be observed, however, in this connection, that the mere disclosure upon the records in the office of the county clerk, that the Coonrod mortgage, though not placed upon record until May 6, 1899, was dated May 1, 1899, did not show or even tend to show that the Coonrod mortgage was actually delivered by the mortgagor to the mortgagee prior to the execution and delivery of the Howlett mortgage, or to the 3d of May, the date of record of the latter. No presumption arose from its date of May 1, 1899, that it was delivered and became a deed upon that day. As a matter of fact, we have seen that it did not become such until the 3d of May, the very day upon which the Howlett mortgage was made, and, according to the testimony, only about two hours before the delivery of that mortgage. So far as anything in the record of the mortgage was concerned, it might have been delivered two hours after the Howlett mortgage, or three days after.

It remains for us to consider the only other question in the case, namely, is the appellant, under the facts disclosed, entitled to be sub-

rogated as against the respondent (the Dime Savings Institution) to the rights of the Mutual Life Insurance Company of New York, in its mortgage, as they existed at the time it was paid off?

Howlett knew of the existence of the Mutual Life Insurance Company's mortgage at the time he took his mortgage from the Booths, and if the question of subrogation was against him alone, a different case might be presented. But we are dealing here with an assignee, whom the record shows to have been an assignee in good faith for valuable consideration and without notice. In fact, it was notified by Howlett, and the records of Somerset county corroborated his statement, that the Mutual Life Insurance Company mortgage had been canceled some weeks before the assignment to it. It was entitled to rely on the condition of the records as disclosed at the time of the assignment, and should not be defeated or prejudiced by a latent equity. No negligence is chargeable to the Dime Savings Institution in taking the assignment. It carefully examined the records, and, as we have shown, found nothing there to even put it upon inquiry as to the Coonrod mortgage. It would be unjust and contrary to public policy, as expressed in the statutes governing the record of deeds, that one who had taken an assignment under such circumstances, should be prejudiced without fault on his part. On the other hand, Coonrod was clearly negligent in not sooner recording his mortgage, of which he had delivery on the 3d of May, and in not examining the records up to the time that he lodged his mortgage for record in the office of the clerk of Somerset county. If he had made such examination, he would have discovered the mortgage of Howlett, and he would at least have refrained from paying off or having canceled the mortgage to the Mutual Life Insurance Company. This latter was his voluntary act, and was one which the respondent was justified in acting upon. The familiar rule in equity is applicable here; that where one of two innocent parties must suffer by the fraudulent conduct of a third, the one who has, by his negligence or omission to do something that a prudent man under the circumstances should do, enabled the fraud to be committed, must suffer the loss occasioned thereby.

The decree of the court below is affirmed.