STARKEY et al. v. H. O. WOOTEN GROCERY CO. et al.

(Court of Civil Appeals of Texas. Amarillo. Jan. 20, 1912.)

1. EVIDENCE (§ 594*)—WEIGHT—UNCONTROVERTED EVIDENCE.

Where the only evidence offered by plaintiff on a material issue was the unimpeached testimony of defendants, who swore to facts diametrically opposed to plaintiff's contention, a verdict for plaintiff was improper, since plaintiff having called defendants as witnesses could not insist that they were unworthy of belief, and, even if their testimony were eliminated, there would be a failure of proof.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2431; Dec. Dig. § 594.*]

2. FRAUDULENT CONVEYANCES (§§ 300, 301*)—EVIDENCE—SUFFICIENCY.

In an action wherein the plaintiff asked that an alleged fraudulent deed be canceled,

evidence *held* insufficient to support a finding that there was no consideration for the deed, or that the grantees had notice of the grantor's fraudulent intent.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Dec. Dig. §§ 300, 301.*]

3. APPEAL AND ERROR (§ 1178*)—REVERSAL—DIRECTING JUDGMENT.

Where a verdict is directly opposed to the evidence, but the record indicates that the facts have not been as fully disclosed as they might be on another trial, the court in reversing the judgment will order a new trial, and not direct judgment for the appellant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4604–4620; Dec. Dig. § 1178.*]

4. TRIAL (§ 187*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

An instruction that the jury are the judges of the credibility of witnesses and the weight to be given to their testimony, and are not bound to believe any witness although unimpeached and uncontradicted, but may discredit his testimony in whole or in part, and give it such weight as they deem it entitled to, is a charge on the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 414–419; Dec. Dig. § 187.*]

Appeal from District Court, Jones County; P. A. Martin, Judge.

Trespass to try title by the H. O. Wooten Grocery Company against W. O. Starkey and others. From a judgment for plaintiff, defendants W. O. Starkey and L. D. Starkey appeal. Reversed and remanded.

Chapman & Coombes, for appellants. Kirby & Davidson, for appellees.

HALL, J. The appellee H. O. Wooten Grocery Company instituted this suit in the district court of Jones county against appellants in the ordinary form of trespass to try title to 160 acres of land. In the second count of the petition appellee specifically pleaded its title, alleging substantially that on November 5, 1906, appellee was a creditor of J. S. Starkey, the indebtedness being evidenced by a note, and on November 25th it instituted suit thereon, caused a writ of attachment to be issued, and levied on the land in controversy, and on January 23, 1908, recovered a judgment against J. S. Starkey for the amount claimed and for foreclosure of its attachment lien; that an order of sale was issued August 18, 1908, under which the land in controversy was sold, at which sale appellee became the purchaser; that J. S. Starkey was the owner of the land in controversy, and continued to be such owner up to the date of plaintiff's purchase; that just prior to maturity of said note the said J. S. Starkey conveyed the land to L. D. Starkey and W. O. Starkey for a recited consideration of $5,000 cash, which it was alleged was in fraud of creditors of J. S. Starkey. There was a prayer for cancellation of the deed and judgment for the land. J. S. Starkey answered, disclaiming any interest in the land, and does not appeal from the judgment. Appellants W. O. and

L. D. Starkey set up the defense of innocent purchaser for value and prayed for a cancellation of the sheriff's deed, alleging it to be a cloud upon their title. A trial resulted in a verdict and judgment in favor of the appellee Grocer Company and against appellee J. S. Starkey and appellants W. O. and L. D. Starkey, decreeing the title and possession of said land to appellee Grocer Company. Appellee introduced deeds showing title to the land in question to be in J. S. Starkey, also a deed from J. S. Starkey and wife to W. O. and L. D. Starkey, dated October 14, 1907, recorded the following day, which recited a cash consideration of $5,000 and the assumption by the vendees of the unpaid purchase money due the state of Texas. Proceedings in the attachment suit, together with the sheriff's deed, conveying the land to appellee Grocer Company, were also introduced. Appellee Grocer Company then called appellee J. S. Starkey and the appellants L. D. Starkey and W. O. Starkey as its witnesses, and closed. Appellants in their own behalf introduced the deeds above mentioned and closed without the introduction of any oral testimony. Appellants requested a peremptory instruction, which was refused by the court. The case was submitted to the jury upon three special issues as follows: "(1) Did the defendants W. O. and L. D. Starkey at the time of the delivery to them by J. S. Starkey of the deed to the land in controversy actually pay the said J. S. Starkey the sum of $5,000 in cash? (2) Was the deed from J. S. Starkey and wife to the defendants L. D. and W. O. Starkey conveying the land in controversy executed with intent on the part of J. S. Starkey to hinder, delay, or defraud his creditors? (3) If you answer question No. 2 above in the affirmative, then did W. O. Starkey and L. D. Starkey know of such intent on the part of J. S. Starkey?" The jury answered the first question in the negative, the remaining two in the affirmative.

[1] Appellants by their first assignment of error insist that when the issues joined between parties to a suit are whether a valuable consideration was paid for the land in controversy by the defendant, whether the conveyance to them by their codefendant was in fraud of his creditors, and whether they had notice of such fraud, and the only evidence bearing upon these issues was uncontroverted and unimpeached testimony of said defendants offered as witnesses for the plaintiff to the effect that said purchaser paid a valuable and adequate consideration for said land, innocent of and without notice of any fraud, if any existed, and unequivocally denying fraud on the part of such vendor and any knowledge of or participation in such fraud by such purchasers, if any existed, it is the duty of the trial court to direct a verdict for such defendant purchasers. Briefly stated, the proposition is this: Where in sup-

port of its cause of action the plaintiff places the defendants upon the stand, and the effect of their testimony is to unequivocally deny plaintiff's right of recovery, then may the jury, in the absence of any other evidence, arbitrarily disregard defendant's testimony, and render a verdict adverse to the only evidence introduced in the case. It is said in 1 Moore on Facts, § 89: "A party who calls his adversary as a witness is bound by his testimony unless he can by other witnesses or evidence, direct or circumstantial, show that the testimony is false. Whatever of improbability or suspicion may attach to the testimony owing to the peculiar facts or circumstances of a case, it may not be sufficient to countervail the effect of the direct testimony thus brought out from his adversary. Coonrod v. Kelly, 119 Fed. 841, 846 [56 C. C. A. 353]." Id. § 131. "Wherever the trier of facts is not bound by the testimony of a witness because he is an interested party or for other reasons, there is certainly no justification for not only refusing to believe the witness, but without further evidence finding the exact contrary from his testimony. Discrediting a witness simply blots his evidence from the case. Thus, if the testimony of the defendant in an action for malicious prosecution that he believed the plaintiff guilty is discredited, the plaintiff still had the burden of proving that the defendant did not believe in his guilt. A party upon whom it is incumbent to prove an alleged fact cannot call his adversary as a witness to that fact, elicit testimony from him to the effect that such fact has no existence, and then call upon the jury to discredit the evidence of such adversary, merely because he is interested as a party and to base upon the assumed falsity of his evidence an affirmative finding of the existence of such alleged fact without any other evidence of its existence, or from which it may be inferred. * * * When it is incumbent on a party to establish a fact, and the only testimony in relation thereto contradicts it, a jury cannot capriciously mangle the testimony so as to convert it into evidence of what it does not prove. If the witness be deserving of credit, the fact necessary to be shown is disproved, and, if he be not worthy of credit, there is a defect of proof." 1 Moore on Facts, § 131, citing Kirby v. Delaware, etc., Canal Co., 20 App. Div. 473, 46 N. Y. Supp. 777; Siefke v. Siefke, 6 App. Div. 472, 39 N. Y. Supp. 601; Williams v. Van Norden Trust Co., 104 App. Div. 251, 93 N. Y. Supp. 821.

In Goree v. Goree, 22 Tex. Civ. App. 470, 54 S. W. 1036, Key, Justice, said: "We have carefully considered the entire record, and have reached the conclusion that there is no evidence that will support a finding that the defendant had any notice of the fact that W. T. Goree intended to abandon his wife, and not fulfill his promise to buy her another home at the time he bought the land and the deed was executed. The plaintiff made

the defendant her witness, thereby vouching for his credibility (Paxton v. Boyce, 1 Tex. 325), and he testified that he had no knowledge of the contemplated abandonment until the day after the deed was executed, and no other witness testified to any fact or circumstance inconsistent with his testimony on that subject, nor was any circumstance shown which would have put a prudent man upon inquiry to ascertain if W. T. Goree intended to defraud the plaintiff"—and upheld the deed.

Our Supreme Court in Grand Fraternity v. Melton, 102 Tex. 399, 117 S. W. 788, said: "The judgment must stand unless the evidence establishes that the shooting was intentional to that degree of conclusiveness which precludes a reasonable doubt to the contrary; that there must be no room for fair and reasonable minds to reach different conclusions from the evidence. This is the rule that governs in this court. The jury were the judges of the credibility of the witnesses, but they had not the right to arbitrarily reject the evidence of an unimpeached witness against whom there was no discrediting fact or circumstance. Jewell and Pollock appear from the testimony to have been friends to Melton, and there is nothing to show that they bore any relation whatever to the fraternity that would justify suspicion against their truthfulness. The jury were the judges of the weight of the evidence, but they could not lawfully deny proper weight to undisputed facts with no suspicion cast upon them. If the jury had the power to discredit any and every witness and to disregard any and all facts, their verdicts could not be set aside by the judge nor reviewed by the appellate courts, yet the law enjoins it upon the courts to set verdicts aside when contrary to the evidence or the law." The earliest case to which we have been cited bearing upon this question is that of Paxton v. Boyce, supra, involving the question of the fraudulent transfer of a slave, in which our Supreme Court said: "By a reference to the evidence contained in the statement of facts, it is very obvious that the plaintiff made an effort to prove that the purchase of the slave was made by the claimant with an intent to defeat and defraud him of his just debt, and with this view circumstantial evidence was given of a fraudulent intent on the part of the vendor. His declarations were proven conducive to that end, but not in the presence of the vendee, and, in attempting to bring home notice to the vendee of that intent by the vendor to make him a participator in the fraud, the only circumstance proven was that he lived a neighbor to the vendor. There was no proof of actual notice or participation in the supposed fraud, and, if there was proof at all, it was only by presumption and that not drawn from pregnant facts, but from a fair-fetched probability. It is an acknowledged rule of evidence that presumptions merely are not to

stand against unimpeached positive testimony. We find in the statement of facts that the plaintiff made a witness of the claimant of the property on the trial and propounded the interrogatory: 'Did you know of the pendency of the suit?' Its object was no doubt to prove a fact from which a reasonable conclusion could be drawn by the jury of his participation in the fraud of his vendor. His answer was an unequivocal denial. It is a rule of evidence that, when one party makes a witness of the other, he does it under the responsibility and condition that he thereby places him on the score of credibility beyond impeachment. He may prove the witness mistaken by proving the party to be otherwise, but he will not be allowed to impeach his credibility. The answer of the complainant destroyed the presumption arising from such circumstances as were proven. Fraud cannot be presumed. If it is proven by circumstantial evidence, the circumstances should be strong and pregnant, from which no other reasonable conclusion could be drawn. When the above rules are applied to the evidence presented by the statement of facts, it will be seen that the verdict in the case under consideration is not only not supported by the weight of the evidence, but is contrary to some of the best-established rules governing testimony."

[2] The testimony of the defendants in this case showed that the father of J. S. Starkey and the grandfather of L. D. and W. O. Starkey had given $4,000 in gold to his grandsons, L. D. and W. O. Starkey, which one of them had brought from Hico, Tex., in a handbag and buried in a cellar of his home some months before the alleged fraudulent purchase and sale; that the two grandsons had by their own efforts saved up $500 each, which, added to the $4,000 in gold, constituted the cash consideration named in the deed. None of this money had ever been placed in any bank, and they testified that they were not given to patronizing banking institutions. Both of the grandsons positively denied any knowledge of the fact that their father was indebted to any one or that any suit had been filed against him or judgment obtained thereon, 'and denied any knowledge of a fraudulent intent, if any, on the part of J. S. Starkey in making the deed, and testified that they had been contemplating buying the land from their father for some time. The father, J. S. Starkey, testified that he was illiterate, knew very little about figures, had nothing to do with banks, and sold the land to his sons because they wanted it, had the money to pay for it, and that he needed the price which they paid. It was further shown that the sons at the time lived separate and apart from their parents, that they had been emancipated by their father several years before, and that their grandfather had enjoined upon them the propriety of investing the money which he had given them in lands. The testimony

in the case was lengthy, and, while there were some badges of fraud tending to show a fraudulent intent upon the part of J. S. Starkey, such as the transfer from a father to his sons while indebted and just prior to the filing of a suit, etc., there is not a line of testimony nor a potent circumstance in the record showing that either L. D. or W. O. Starkey had notice of such fraudulent intent. The story of the $4,000 in gold carried in a handbag from Hico to Jones county and buried in a cellar until it was needed to buy this land, when viewed in the light of modern business methods in an age when every hamlet has its bank and exchange takes the place of bags of gold in the commerce of the world, may have some of the features of a fairy tale about it. But, when we consider the life and habits of those between whom the transaction was had, their illiteracy, and ignorance of systematic business methods, we do not believe that the jury was warranted in finding that no consideration was paid for the land, or that the grantees had notice of their father's fraudulent intent, even if such intent existed, and in arbitrarily disregarding their undisputed testimony diametrically opposed to such findings. No facts were introduced in evidence tending to show that the defendants W. O. Starkey and L. D. Starkey were mistaken or could be, and, having placed them upon the stand, the plaintiffs cannot be heard to insist that they are not worthy of belief. The surrounding circumstances are not sufficient to impeach their recital of the facts.

[3] It follows from what we have said that the judgment must be reversed. Appellants insist that it is the duty of this court to render judgment in their favor because if the testimony of defendants is discredited by the jury there is no evidence to support plaintiff's cause of action, and, having failed to establish its case, the judgment should be for the defendants. Believing as we do that the verdict and judgment being directly opposed to the evidence should not stand, still we cannot assent to their contention and render the judgment for appellants. The case was disposed of upon the trial in an unusual manner and the record discloses that it has not been as fully developed upon either side as it may possibly be upon another trial.

[4] It is only necessary to dispose of one other assignment which complains of the following charge of the court: "You are instructed by the court that you are the judges of the credibility of the witnesses and weight to be given to their testimony. This means that you are not bound to believe any witness, although such witness may have been unimpeached, uncontradicted, and the statement plausible, but you may discredit his testimony in whole or in part, and give it such weight as under all facts and circumstances you deem it entitled to have." The

charge is upon the weight of the evidence, and should not in that form be given upon another trial. Tyler Ice Company v. Tyler Water Co., 42 Tex. Civ. App. 210, 95 S. W. 649.

Reversed and remanded.