WEST TEXAS NAT. BANK et al. v. WICHITA MILL & ELEVATOR CO. et al.
(No. 1157.)

(Court of Civil Appeals of Texas. Amarillo. April 18, 1917.)

1. GARNISHMENT ⊜⟶218—EVIDENCE—BURDEN OF PROOF.

Where funds were garnished as belonging to a defendant, on the answer of the garnishee and of claimants brought into the case, that the funds belonged to the claimants, the burden was on the plaintiff to show that such funds belonged to the defendant.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 411–413.]

2. CARRIERS ⊜⟶58 — BILL OF LADING — ASSIGNMENT—DRAFT.

The fact that a draft drawn by the consignee of a car of wheat in favor of a bank was attached to a shipper's order bill of lading in favor of the consignee, standing alone would make the bank the owner of the fund collected, unless they had in turn been assigned to its correspondents.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190.]

3. CARRIERS ⊜⟶58—BILL OF LADING—ASSIGNMENT—DRAFT.

The fact that the bill of lading was not indorsed by the consignee was not material, as assignment could be proven in other manner than indorsement either of the draft or of the bill of lading.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190.]

4. CARRIERS ⊜⟶58—BILL OF LADING—ASSIGNMENT.

The fact that a shipper's order bill of lading in favor of the consignee was attached to a draft drawn by the consignee in favor of a bank, with notation on the face of the draft to the bill of lading attached, was itself sufficient assignment of the bill of lading upon its delivery with the attached draft to the bank.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190.]

5. GARNISHMENT ⊜⟶218 — OWNERSHIP OF FUND—EVIDENCE—PRESUMPTION.

The fact that the shipper of the goods, and not the consignee and drawer of the draft, indorsed the consignee's name on the draft and collected the proceeds, does not discharge the burden of showing that fund belonged to the consignee, since there is no presumption that the shipper was guilty of forgery, or that the

bank officials aided him in the commission of the crime.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 411–413.]

**6. CUSTOMS AND USAGES ⊙⟿10—BILL OF LADING—NONPAYMENT—TITLE OF HOLDER—LIABILITY OF INDORSER.**

Where a draft with bill of lading attached was negotiated through several banks, a custom among banks in accepting drafts with reference to charging back to its immediate indorser or customer the amount of funds for which credit had been given on receipt of the draft, in the event it is not finally paid, would not change the character of a transaction and destroy the effect of successive deliveries of the draft as constituting an assignment of the funds, since the right of the holder of a draft against indorsers on nonpayment does not defeat the ownership of the draft and rights incident to it.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 11–21, 35–39.]

**7. CARRIERS ⊙⟿58 — TRANSFER OF BILL OF LADING—EVIDENCE—SUFFICIENCY.**

Evidence held not to sustain findings that the funds belonged to the consignee, that the shipper had possession of the draft and bill of lading without the knowledge and consent of the consignee, indorsed his name thereto without his knowledge, consent, or authority, and that the credit of the account of the shipper with the amount of the draft was without the knowledge of the consignee, and that the bank knew all these things.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190.]

**8. APPEAL AND ERROR ⊙⟿150(1) — RIGHT TO APPEAL—INTEREST.**

As the bank to whom the shipper assigned the bill of lading would ultimately bear the loss of the funds declared to be property of the consignee and have a probable right of recovery against the shipper, the fact that they sought a release of the fund so that it might be handled in the usual manner instead of praying that it should be paid direct to such bank would not affect their right to appeal from the judgment that the consignee was the owner of the fund.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 934–946.]

**9. APPEAL AND ERROR ⊙⟿150(1)—RIGHT TO APPEAL—INTEREST.**

Where the claimant of garnished funds prayed for general and special relief, thus entitling it to a payment of the fund if that were proper, it was entitled to appeal from a judgment that the fund belonged to the defendant in the case.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 934–946.]

Appeal from District Court, Wichita County; E. W. Nicholson, Judge.

Suit by the Wichita Mill & Elevator Company against J. L. Allen, in which plaintiff instituted garnishment proceedings against the Wichita State Bank, and thereafter the West Texas National Bank and others claimed the funds in the hands of the garnishee. From the judgment, the named claimant and others appeal. Reversed and rendered.

Morrison & Morrison, of Big Springs, for appellants. Huff, Martin & Bullington and Fitzgerald & Cox, all of Wichita Falls, and William J. Berne, of Ft. Worth, for appellees.

BOYCE, J. The appellee the Wichita Mill & Elevator Company, having a suit in which judgment was subsequently rendered against J. L. Allen for the sum of $760.32, instituted garnishment proceedings against the Wichita State Bank, of Wichita Falls, Tex. Said Wichita bank answered the writ of garnishment: That it was not indebted to the said J. L. Allen, and did not know of any other persons who might be so indebted or have funds belonging to him except as the facts further stated in said answer might show; that on the 25th day of August, 1915, it received and collected a draft drawn by said Allen on the Wichita Mill & Elevator Company in the sum of $1,139.25, and payable to the West Texas National Bank, of Big Springs, Tex.; that said draft had been forwarded to said Wichita bank by the First National Bank of Ft. Worth as a cash item, and the writ of garnishment was served immediately upon payment of said draft; that the Ft. Worth bank was claiming said funds for the Big Springs bank; and that both of said banks had demanded the payment of said money. Wherefore the garnishee asked that said two banks be made parties to the suit to the end that their rights in and to said funds might be determined.

The Big Springs bank answered that it had received the said draft, to which was attached a bill of lading on a consignment of wheat, from Dell Hatch, and believing that said Hatch was the owner of said draft and bill of lading representing the consignment of wheat, gave him credit therefor; that said draft with bill of lading attached was forwarded to the Ft. Worth bank as a cash item, the Ft. Worth bank being charged with the amount of said draft on the books of said Big Springs bank. Wherefore it prayed that said funds be released so that the Wichita bank might make remittance thereof to the Ft. Worth bank, as it would be its duty to do, and which it would do if permitted and for general and special relief. Said West Texas bank also requested that Dell Hatch be made a party to the suit.

The Ft. Worth bank answered, admitting the receipt of the draft and bill of lading from the Big Springs bank, and crediting the account of the Big Springs bank with the said sum of $1,139.25, alleging, however, that the credit was subject to final payment of said draft and receipt by it of the proceeds thereof; that it forwarded the same to the Wichita State Bank as a cash item, charging said bank with said amount for collection and remittance to it; that on account of the fact that the said funds were being held up it had charged back said amount to the Big Springs bank as it claimed it had a right to do, but the Big Springs bank refused to recognize its right to so charge back said sum, and claims a credit for said amount against the Ft. Worth bank. It prayed that

---

⊙⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

if it be held that it is entitled to said funds it have judgment against the Wichita State Bank, and if not that judgment be entered, releasing it from liability to the Big Springs bank.

Dell Hatch answered that under an arrangement with J. L. Allen, whereby Hatch was to furnish the money and buy wheat which Allen was to test and resell, the profits of the transaction to be divided between them, he had purchased the wheat against which the draft was drawn and paid for the same out of his own funds, loading same on car at Big Springs; that in pursuance to the arrangement between said Hatch and Allen, a bill of lading was issued to Allen, who drew the draft in question on the purchaser on resale, the Wichita Mill & Elevator Company; that said draft with bill of lading, indorsed by Allen, was delivered by the said Hatch to the Big Springs bank, which gave him credit therefor, less amount of exchange, which said credits had been drawn out of said bank by the said Hatch; that he had paid the said Allen one-half of the profits realized from the said sale; that by reason of such facts the title to said funds passed to the Big Springs bank, unless it in turn had passed title to its correspondent, and said funds should not be held to be the funds of said Allen. He prayed that he be adjudged to go hence without day, etc.

The Wichita Mill & Elevator Company, by its supplemental petition, alleged that said wheat was owned by J. L. Allen, and was shipped on a shipper's order notify bill of lading, and neither the draft nor bill of lading was indorsed by said Allen; that the banks handling the draft never purchased same, but took it for collection; that the Big Springs bank knew that said Allen had not indorsed the draft or bill of lading, but that the manner in which said draft was handled was but a subterfuge on the part of the Big Springs bank and said Allen and Hatch to defraud the plaintiff; that the Big Springs bank was not an innocent purchaser, etc.

The case was tried before the court and judgment entered establishing that the funds in the hands of the Wichita bank belonged to J. L. Allen. Wherefore plaintiff was given judgment against the garnishee for the amount of its said debt against Allen. The defendants, the Ft. Worth bank, the Big Springs bank, and Hatch, were adjudged to take nothing by their claims of said fund and the Ft. Worth bank discharged from any claims of the said Hatch and the Big Springs bank. The funds remaining with the Wichita bank, after payment of the judgment and costs, including an attorney's fee of $35 to the garnishee, were directed to be paid to J. L. Allen.

Upon the trial it was shown that Dell Hatch presented said draft drawn by J. L. Allen on the Wichita Mill & Elevator Company in favor of the Big Springs bank, to which draft was attached shipper's order bill of lading for one car of wheat shipped by Allen to Wichita Falls, to the Big Springs bank, and that said bank accepted said draft as a cash item, crediting the account of Dell Hatch with the same; such funds being subsequently checked out by said Hatch. The draft was not indorsed by Dell Hatch or by Allen. Dell Hatch indorsed Allen's name to the shipper's order bill of lading. The draft was forwarded to the Ft. Worth bank, and by the Ft. Worth bank to the Wichita bank, passing as cash items through said banks, and charged and credited respectively as stated in the pleadings, and was paid by the Wichita Mill & Elevator Company. Immediately thereafter the writ of garnishment in question was served upon the Wichita Bank. Dell Hatch and the cashier of the Big Springs bank testified that the wheat against which the draft was drawn was bought and paid for by Dell Hatch personally. Hatch testified that he was a cotton buyer, living in Howard county, and Allen was a wheat buyer, living at Colorado; that during the year in which this transaction occurred some wheat had been raised in Howard county, and he had made an arrangement with Allen, by which he (Hatch) was to buy wheat and pay for the same; that Allen was to test the wheat so bought and resell it, and the profits of the sales were to be divided between them; and that this car of wheat was bought and paid for by him, in accordance with this agreement with Allen, whereupon Allen drew the draft and turned it over to Hatch, because Allen was interested only in the profits. The cashier of the bank testified that Allen had no account with the bank and that he knew that Hatch had paid for the wheat himself, and thus accepted the draft from Hatch, giving him credit therefor. Testimony was offered to the effect that a custom existed among banks at this time, whereby if final payment of drafts of this character were not made or the proceeds not remitted, the successive banks handling the draft would charge back the amount thereof to its correspondent, the initial bank in turn charging its customer with the amount.

Based on this testimony the trial court found that the car of wheat belonged to J. L. Allen; that Dell Hatch took possession of the draft and bill of lading without the knowledge and consent of Allen and indorsed Allen's name thereto without his knowledge, consent, or authority; that the credit of the account of Dell Hatch, with the amount of the draft, was without the knowledge, consent, or authority of Allen and that the Big Springs bank knew that all these things were done by Hatch without said Allen's authority, knowledge, or consent. He also found that the custom in regard to charging back of items not finally paid or remitted, as above stated, existed.

[1, 2] On the answer of the garnishee and those brought into the case by it, the burden was on the Wichita Mill & Elevator Company to show that the funds belonged to Allen. E. L. & R. R. R. R. Co. v. Terry, 50 Tex. 135; Smith v. Merchants' & Planters' Bank, 40 S. W. 1038; Scheuber v. Simmons, 2 Tex. Civ. App. 672, 22 S. W. 72. The production of the draft and bill of lading alone did not show this fact. The draft was drawn by Allen in favor of the Big Springs bank. To it was attached shipper's order bill of lading in favor of Allen. These facts standing alone would make the Big Springs bank the owner of the funds when collected, unless they had been in turn assigned to its correspondents. Blaisdell v. Citizens' National Bank, 96 Tex. 626, 75 S. W. 295, 62 L. R. A. 968, 97 Am. St. Rep. 944; Campbell v. Alford, 57 Tex. 161; Dows v. National Exchange Bank of Milwaukee, 91 U. S. 618, 23 L. Ed. 214.

[3, 4] The fact that the bill of lading was not indorsed by Allen would not, we think, under the circumstances, make any difference. The assignment could be proven in other manner than by indorsement, either of the draft or the bill of lading. National Bank v. Ricketts, 152 S. W. 648; Singletary v. Goeman, 58 Tex. Civ. App. 5, 123 S. W. 436. The bill of lading being attached to a draft drawn by Allen in favor of the Big Springs bank, with notation on the face of the draft to the bill of lading attached, would we, we think, itself a sufficient assignment of the bill of lading upon its delivery with the attached draft, to the bank; at any rate, all the parties to this transaction so treated it or recognized that the indorsement of Allen's name by Hatch was sufficient, for otherwise the Wichita Mill & Elevator Company would have had no right to the possession of the wheat when it took up the draft and bill of lading.

[5] When the further fact is developed that Hatch, and not Allen, took the draft to the bank and himself collected the proceeds of the draft, does this discharge the burden and show that Hatch was acting wrongfully, and that the bank knew that he was doing so? Ordinarily, no presumption of wrongdoing exists, and when, as in this case, Hatch presented to the Big Springs bank a draft drawn by Allen in favor of said bank on a third person, at the same time indorsing Allen's name to the bill of lading and collecting the proceeds from the bank, it would seem to us that one who has assumed the burden of attacking the transaction should show that Hatch was acting without authority from Allen; and no presumption that Hatch was guilty of forgery and the bank officials aiding and abetting him in the commission of the crime could be invoked by appellee as discharging the burden of proof upon it. It was held in the case of Thornton National Bank v. Robertson, 89 Kan. 509, 132

Pac. 193, that a maker who draws a note in favor of a bank places it in the hands of a third person constitutes such third person his agent to make such use of the note as the party to whom it was delivered and the payee bank might agree upon. This is the case here except that the instrument is a draft. See, also, Corpus Juris, vol. 8, pp. 210, 238.

The face of the transaction then shows that the Big Springs bank became the owner of the funds to be collected on the draft, and the only testimony that explains its acquisition of the draft is that of the bank's cashier and Hatch, whose testimony given by deposition we have already referred to. If this testimony is true Hatch was the true owner of the fund to be collected on the draft drawn by Allen, and on delivery of the draft to the Big Springs bank assigned his right to the bank. If we disregard this testimony entirely the appellee has failed to make its case. We cannot take the testimony, conclude that it is untrue, and from it deduce presumptions directly contrary thereto that Allen, Hatch, and the bank were in this way attempting to cover up the real transaction and thus defraud Allen's creditors without any other testimony whatever to support such conclusion. Starkey v. H. O. Wooten Grocery Co., 143 S. W. 692.

[6] We do not think that the custom shown to exist among banks in accepting drafts of this kind, with reference to charging back to its immediate indorser or customer the amount of funds for which credit had been given on receipt of the draft in the event it is not finally paid, would change the character of this transaction and destroy the effect of the successive deliveries of the draft as constituting an assignment of the funds; the holder of a draft on nonpayment has a cause of action against all indorsers and the drawer, but this right does not defeat his ownership of the draft and rights incident to it. The right to charge back under the circumstances is nothing but a method of enforcing the liability of the indorser or drawer of the draft.

[7] We do not think the finding that the funds belonged to Allen and those findings that are collateral to it as made by the court, as above stated, are sustained by the evidence.

[8, 9] The appellee contends that appellants Hatch and the Big Springs bank cannot appeal from the judgment because they made no claim to the fund. The issue in the garnishment case was whether the fund belonged to Allen, and the appellants were brought into the case for the purpose of being concluded by any judgment that might be entered determining this issue. The Wichita bank, upon the coming in of the Ft. Worth bank, the Big Springs bank, and Hatch, became a disinterested holder of the fund. If the pleading and evidence showed that the fund did not belong to Allen, and that the

appellants had any interest in it that would be adversely affected by the judgment, we do not understand why they could not appeal from the judgment. It is apparent from the judgment that the Big Springs bank will ultimately bear the loss of the funds having a probable right of recovery against Hatch; it is also apparent that this would not have been the result of the transaction but for the interruption of the garnishment. That appellants merely sought a release of the fund so that it might be handled in the same manner as it would have been but for the garnishment instead of praying that the fund be paid direct to the Big Spring bank should, it seems to us, make no difference in their right to appeal from the judgment. Besides, the pleading of the Big Springs bank contained a prayer for general and special relief, and under this a judgment could have been entered, directing the payment of the fund to said bank, if that were the proper judgment in the case.

There are other assignments, but because of the holding we have already made it is not necessary to consider them. The judgment will be reversed and such judgment rendered as under the evidence we think the court below should have entered, to wit, that the garnishee, the Wichita State Bank of Wichita Falls, Tex., be discharged, and that the appellee the Wichita Mill & Elevator Company pay all costs incurred in this proceeding, including an attorney's fee of $35, to be paid to the garnishee.