## STANDARD WATER SYSTEMS CO. et al. v. GRISCOM-RUSSELL CO.

(Circuit Court of Appeals, Third Circuit. February 2, 1922.)

No. 2689.

1. **Equity ☞339—Answer under oath is evidence for defendant.**

When a bill does not waive answer under oath, the answer of a defendant under oath, directly responsive to the bill, is evidence in his favor.

2. **Evidence ☞591—Witnesses ☞324—Complainant, calling defendant as witness, is estopped to deny his credibility, and bound by testimony.**

A complainant, who calls a defendant as a witness, is estopped to deny his credibility, and is bound by his testimony, unless it is countervailed by other evidence.

3. **Patents ☞328—1,131,738, for an evaporator, claim 8, held void for lack of invention.**

The Row patent, No. 1,131,738, for an evaporator, claim 8, *held* void for lack of invention, in view of the prior art.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Suit in equity by the Griscom-Russell Company against the Standard Water Systems Company and others. Decree for complainant, and defendants appeal. Reversed.

Victor D. Borst, William M. Stockbridge, and Herman J. Westwood, all of New York City, for appellants.

W. B. Morton and William H. Davis, both of New York City, for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and ORR, District Judge.

---

ORR, District Judge. The Griscom-Russell Company, by its bill, charges the Standard Water Systems Company and three individuals with infringement of United States patent No. 1,131,738, issued to Reuben R. Row, under date of March 16, 1915, for an evaporator. It sets forth that the apparatus of the patent was the invention of one of the defendants, who assigned the same to the Griscom-Russell Company. It charges that the said inventor and the other individual defendants, all three having been in the employ of the Griscom-Russell Company, left such employment and associated themselves with the Standard Company, with the purpose and intent to injure the Griscom Company, by appropriating to themselves and the Standard Company valuable data, engineering designs, drawings, etc., which were the property of the Griscom Company; and that they all conspired together to infringe the letters patent above referred to. Such is a brief memorandum of the charging parts of the bill. The bill does not waive an answer under oath. All of the defendants answered; the three individual defendants joining in an answer verified under their oath. The corporation defendant filed a separate answer. The case was so proceeded with in the court below that a decree was entered adjudging that the letters patent were good and valid in law; that the Griscom Company was the lawful owner; that the defendants had jointly infringed the letters patent, specifically claim 8 thereof; that the plaintiff recover profits, gains, and advantages; and that an account be stated. The court, however, did not issue an injunction against the individual defendants, but against the Standard Water Systems Company only. The individual defendants have appealed from the decree of the court.

[1] We have noted that the individual defendants had filed answers under oath. It is to be observed, also, that two of them, Row and Thompson, were called as witnesses by the plaintiff. By calling them as witnesses, the plaintiff asserts that they are credible persons, and is estopped from impeaching their credibility; yet the plaintiff is not prevented from showing that they are mistaken. The testimony of these two parties called by the plaintiff is explicit in denial of the main charging parts of the bill. Nowhere else in the record there is found any direct testimony of any federation between the individual defendants for the purpose of injuring the plaintiff, as charged in the bill. At most, there are only circumstances and peculiar facts which might perhaps arouse in the plaintiff a suspicion, but such evidence is not sufficient to overcome the positive denial of the defendants, found in their answer, and found, also, in their testimony as witnesses called by the plaintiff.

The cases bearing upon a situation of this kind are rather difficult to find. Of course, there is the case of Dravo v. Fabel, 132 U. S. 487, 10 Sup. Ct. 170, 33 L. Ed. 421, holding that, when the plaintiff in a suit in equity does not waive an answer under oath, the defendant's answer directly responsive to the bill is evidence in his favor, and further that the party offering, in a court of the United States, a deposition taken under the Pennsylvania statute, which provides for the examination of the opposite party as if under cross-examination, makes the witness his own, and is not at liberty to contend that he is not entitled to credit.

[2] There is a case somewhat analogous to the case at bar, so far as the calling of a defendant as a witness for a plaintiff is concerned, to be found in Coonrod v. Kelly (in this Circuit) 119 Fed. 841, 56 C. C. A. 353. There the bill did not waive answer under oath by the defendants, and the answers to the bill and to the interrogatories therein propounded were responsive, and were in general tenor and effect the same as testimony given by two of the defendants when called by the complainant. As Judge Gray puts it (119 Fed. at the bottom of page 846, 56 C. C. A. 358), alluding to the testimony of the defendants who had been called by the plaintiff:

"By this testimony he is bound, unless he can, by other witnesses and evidence, direct or circumstantial, show that their testimony is false. A complainant, who places the defendant on the stand, is not bound to refrain from contradicting him, where the exigency of the case demands it. In the case before us, however, there has been no testimony adduced to contradict that of Booth and Howlett. Whatever of improbability or suspicion may attend it, owing to the peculiar facts or circumstances of the case, it is not sufficient to countervail the effect of the direct testimony brought out by complainant from the defendants whom he called upon to testify."

In the instant case, no facts or circumstances, of which evidence was offered, are sufficient to countervail the direct testimony brought out by the complainant from the two defendants whom it called upon to testify.

What seemed to weigh most heavily against the defendants in this case is the fact that one of them asserted invention to procure a patent which he assigned to the plaintiff, and that, while all of the individual defendants were subsequently associated with their codefendant, the said codefendant manufactured and sold devices with the patented improvements embodied therein. There is not sufficient evidence in the case to satisfy us that any of the three individual defendants furnished information to the other, with respect to the device of the patent. It appears in evidence that the Standard Company, as early as 1912, was prepared to install in the battleship New York an apparatus containing the device of the patent. This was several years before the individual defendants left the employ of the plaintiff.

It is true that the defendant Row, who asserted invention and received the patent, is estopped from denying invention; but he is not estopped from showing to what extent his alleged invention is limited by the prior art. This question, however, seems to be immaterial in this case. The public is interested in every adjudication with respect to the validity of a patent, and it is the duty of courts having jurisdiction of patent causes to have regard, at all times, of the rights of the public, so that such rights may be rather enlarged than diminished by judicial determination. That the public is interested in every patent case is apparent from reading the opinion in Hill v. Wooster, 132 U. S. 693, 10 Sup. Ct. 228, 33 L. Ed. 502. That opinion is also in point, because it emphasizes the doctrine that it is not enough that the thing shall be new, that in the shape or form in which it is produced it shall not have been known before, and that it shall be useful; but it must, under the Constitution and the statutes, amount to invention or dis-

covery. See, also, Hansen v. Slick, 230 Fed. 627, 145 C. C. A. 37, decided by this court.

[3] Coming down to the patent itself, we have reached the conclusion that it is invalid, so far as claim 8 is concerned, in view of the prior art. That claim is as follows:

"The improvement in evaporating apparatus for obtaining purified liquid, which comprises a containing shell, a door closing an aperture in said shell, a heating pipe structure secured to said door and projecting within said shell, a supporting roller for said structure within said shell and a second supporting roll for said structure outside said shell, substantially as described."

The process of vaporizing water or other liquid to obtain a purer liquid is old. Apparatus to accomplish the result desired is old. The evaporators used on shipboard for procuring pure water from salt water, although differing in details, are caused to be operated in practically the same way. Salt water is contained in a shell; steam is introduced into coils, which are located within the shell containing the water from which evaporation is to take place, and by the heat of the steam the evaporation is produced, and the vapor rising is carried off to a condenser. They need to be cleaned from time to time. In other words, the residuum from the sea water must be removed from the shell, perhapes by flushing, scraping, or in some other manner. In order to clean the shell effectively, the interior coils through which the steam circulates should be removed. The removal and the return of the coil naturally presented difficulties, especially as the size of the evaporator increased, and the interior coils, suitable for the increased size, became heavier. What the patentee in the patent in suit seems to have done was to have supported the heating pipe structure, consisting of the interior coils, upon rollers above and below. The roller or castor below and outside of the shell was intended to take the place of ordinary pieces of pipe, which, according to the testimony of Capt. Oliver, had been previously used. The supporting roller within the shell took the place of the overhead trolley which, Capt. Oliver testified, was the commonest form of suspension that was found aboard ship for handling weights. It is true, Capt. Oliver speaks of such form of suspension as requiring that the thing suspended should be steadied; that is, perhaps, prevented from having a lateral or forward movement, irrespective of the movement of the trolley, yet the rollers are clearly, under his testimony, substitutes for what had previously been used.

We are of the opinion that there was no invention in the addition of rollers to the evaporator. Fifty years ago, if not to-day, a child experienced the value of rollers upon a trundle bed in which he slept, and which he himself, perhaps, shoved under the big bed when he was through with it in the morning. The addition of rollers to a desk, in order that it may be moved, so that the carpet could be cleaned under it, was an improvement by the man who added the rollers; but that improvement did not rise to the dignity of invention or discovery, within the meaning of the Constitution and the laws passed in pursuance thereof, intended to give an inventor an exclusive right for a time, as against the public.

As before said, regardless of the principle that an assignee of a patent cannot deny invention, it is the duty of the court to determine lack of invention, where apparent, in order that the public interests may be guarded. Plaintiff having wholly failed to make out a case in the court below, the decree is reversed, with directions to the court below to dismiss the bill, at plaintiff's costs.