PLANTERS AND MECHANICS BANK ET AL. v. ELIZABETH P. FLOECK.

Delivered December 2, 1897.

**1. Garnishment—Liability of Garnishee—Construction of Statute.**

The extent of a garnishee's liability is measured and limited by the express provisions of the statutes.

**2. Same—Same—Property Acquired After Answer.**

A garnishee can not be charged with property of the debtor which comes into his hands after answer to the writ.

**3. Same—Fund Not Reached by Writ—Presence of All Parties Interested.**

A judgment against a garnishee on account of a fund which came into his hands after answer to the writ, and which was therefore not properly subject to the writ, can not be upheld because all the persons interested in the fund were present in

court, and the fund might have been reached by a subsequent writ. Pleasants, J., dissenting.

APPEAL from Harris. Tried below before Hon. S. H. BRASHEAR.

*Hutcheson, Campbell & Myer,* for appellants.—A garnishee is only liable for what may be in his hands subject to garnishment at the time of the service of the writ of garnishment, and what may come into his hands between the time of the service of the writ of garnishment and the filing of his answer. Rev. Stats., arts. 227-253; Schepflin v. Small, 4 Texas Civ. App., 496; Blankenship v. Moore, 16 S. W. Rep., 780; Moore v. Blum, 40 S. W. Rep., 514; Obenchain v. Reekes, 1 White & W., sec. 970; Drake on Attach., sec. 415a.

*E. P. Hamblen* and *J. M. Coleman,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—*Conclusions of Fact.*—The appellee, a judgment creditor of one W. D. Alexander, garnished the appellants, the Planters and Mechanics Bank and James A. Patton, the president of said bank, on December 5, 1891. The petition averred that the affiant had reason to believe that the said bank and Patton were indebted to the said Alexander, or that they had in their hands effects belonging to the defendant Alexander.

On the 5th day of January, 1892, the said bank answered, denying any indebtedness from it to the said Alexander, at the time of the service of the writ of garnishment, or since that time, or at the time of its answer; and it further averred that it did not have any effects belonging to Alexander at the time of the service of the said garnishment, or since then, or at the time of its answer, nor did it know of anyone who was indebted to Alexander or held effects belonging to him, save and except that it held for collection two certain promissory notes, executed by one G. A. Gibbons to said W. D. Alexander, one of which was for $1305, dated July 6, 1888, and payable one day after date, and bearing interest at the rate of 10 per cent per annum from date, with a credit of $50 indorsed; and the other was for $1890, and also due one day after date, and dated February 10, 1888, and bearing like interest as the first note, with a credit of $62 indorsed, both credits being money paid upon the interest due upon the notes; that said notes were assigned to the bank on the 1st of September, 1891, and that about the 1st of October, 1891, long prior to service upon the bank of the plaintiff's writ of garnishment, it was notified that said notes had been assigned by the said Alexander to John Finnegan & Co., a mercantile firm of the city of Houston, and that an order was exhibited to the bank from said Alexander upon it, directing all collections made upon the said notes to be paid to the said Finnegan & Co., and that thereupon the bank agreed to collect said notes for account of the said Finnegan & Co.; and said bank further averred that it had reason to believe, and did believe, that said notes were transferred in good faith and for

full value to the said Finnegan & Co. The answer concluded with prayer that the garnishee be dismissed with its costs, and prayer that the court would protect it, and offering to make any further answer or disclosure herein which to the court might seem best.

The garnishee Patton, on the said 4th of January, 1892, answered substantially as did the bank, and in addition he alleged that the payor of said notes executed to him, on the 8th day of September, 1891, a mortgage upon certain personal property, consisting of stocks of merchandise and tailor tools, situated in Houston and San Antonio, Texas, and also upon the outstanding book accounts and bills receivable, to secure the payment of said notes; that said chattel mortgage was duly executed by the said payor, the said G. A. Gibbons, and duly recorded as by law required, and that said garnishee took possession of said property and choses in action, and was proceeding to sell the same, but that on or about the 4th of October, 1891, by an order of the Circuit Court of the United States for the Eastern District, he was compelled to turn over and deliver all of said property and choses in action to J. E. McComb and T. W. Ford, receivers appointed by said Circuit Court in the two suits of John Maguire v. G. A. Gibbons and Patrick J. Cunningham, then pending in said court. The answer concludes, as did the answer of the bank, with an offer to make other answers and disclosures, as may be required by the court, or by the plaintiff, at any time when called upon so to do, and with prayer that garnishee be protected, and that he be discharged with his costs, including a reasonable attorney's fee.

On the 16th of December, 1892, the plaintiff, appellee here, filed a supplemental petition, in which she declares that the litigation referred to in garnishee Patton's answer has been settled, and that said Patton has received the sum of $2600.93 belonging to W. D. Alexander, the defendant in the original answer; that the order given by Alexander to Finnegan & Co., set out in garnishee's answer, was given without consideration, and with the intent on the part of said Alexander, and with knowledge of such intent on the part of Finnegan & Co., to hinder and delay his creditors; and she prays that Finnegan & Co. be made parties defendant to the garnishment proceedings.

On November 27, 1893, Finnegan & Co., composed of John Finnegan and Robert E. Paine, filed their answer, in which they deny the allegations of fraud in plaintiff's supplemental petition, and aver that the notes in question were transferred by Alexander to them in payment of a preexisting indebtedness to them from Alexander, and for the further consideration of advances of money to be made by them to Alexander, from time to time, as he might need; and they aver that they did not know, at the time of the transfer of said notes to them, that he had other creditors than themselves; and that they took the notes to secure the payment of a debt due them by Alexander, which debt they allege was due them on an account of loans sustained in the purchase and sale of wool in the year 1887, which wool was purchased on joint account for them and for Alexander, they advancing the money for the purchase and shipment of

the wool, and Alexander doing the buying, the contract between them being that Alexander should share equally with them in the profits and losses of the venture; that the wool was finally sold, after having been kept on hand many months, at a large loss; that the sales of the wool were reported to and exhibited to Alexander at the time, but that he was then, as he averred, unable to pay his part of the loss, but promised to do so as soon as able; that the last of the sales was made in 1888, and that in September, 1891, Alexander reported to them that he was now able to settle for his part of the loss, and that defendant Paine and Alexander, from the books of the firm of Finnegan & Co., ascertained his share of the loss, and for which sum, with interest thereon, Alexander executed his two promissory notes in September, 1891, one dated September 1st, for $895.75, payable to the order of Finnegan & Co., with interest at 10 per cent per annum from date, and due thirty days after date, and the second dated September 28, 1891, for $850, payable to the order of Robert E. Paine, with interest at 10 per cent per annum, and due one day after date; and that to secure the payment of these notes, and also to secure Finnegan & Co. for any advances they might thereafter make him, the said Alexander gave to them an order about the 1st of October, 1891, upon the Planters and Mechanics Bank, for all moneys collected by them on the notes described in said garnishee's answer; and they aver that said notes in said garnishee's answer described, and the moneys collected thereon, were absolutely assigned to said defendants; and the said defendants further aver that they did make advances to said Alexander long before the service of the writ of garnishment in this case, and which advancements and the said two notes due them from Alexander exceed in amount the money that can be realized upon the notes in the hands of the said garnishee.

On the 13th of December, 1895, the plaintiff filed her second supplemental petition, in which she denies the allegations of the defendants Finnegan & Co. that Alexander transferred to them the notes in the hands of the garnishee in consideration of an indebtedness from Alexander to them, and again charges that the assignment was made in fraud of the creditors of said Alexander, and that the said defendant Paine, of the firm of Finnegan & Co., had conspired with the said Alexander to defeat his creditors in the collection of their debts. She further avers that the suits referred to in garnishee Patton's answer as then pending in the Circuit Court of the United States have been settled, and all of the property covered by the mortgage given to secure the notes of Gibbons to Alexander has been returned to the said Patton, and that he has collected on said notes some $2600, and which sum is now in the Planters and Mechanics Bank, and that it is conceded that said money has been collected and is now in the garnishee's possession; and plaintiff further avers that, as said garnishee the said Planters and Mechanics Bank has submitted itself to the jurisdiction of the court, and has offered to make any further answer or disclosure which the court may require, the said money is subject to the order of the court, and she therefore prays for

judgment for said moneys. This petition was duly sworn to by plaintiff on November 9, 1896.

· Garnishees moved to strike out plaintiff's second supplemental petition, assigning, among other reasons for said motion, that said supplemental petition is not a contest or traverse of garnishee's answer, and presents no legal ground why garnishee's application for discharge should not be granted. In this motion the defendants Finnegan & Co. joined. The motion was overruled, and both garnishees and defendants excepted; and upon trial of the cause, verdict and judgment were rendered for plaintiff, and garnishees and defendants appeal.

Upon the facts of the case, as disclosed by the record, this court concludes that there is ample evidence to sustain the verdict of the jury, either upon the theory that there was no indebtedness from Alexander to Finnegan & Co. at the time of the transfer of the notes due from Gibbons to Alexander by the latter to Finnegan & Co., or if there was an indebtedness, the transfer was made with the fraudulent intent on the part of Alexander to defraud the plaintiff, and that this intent was known to and participated in by defendant Paine; that the money charged by plaintiff to have been collected by Patton upon the Gibbons notes was collected by Patton after he and his co-garnishee, the Planters and Mechanics Bank, had answered plaintiff's garnishment, and that the collection of such money, and the possession of the same by the bank at the time of the trial, were admitted facts, and that appellee was, as averred by her, a judgment creditor of the said W. D. Alexander.

WILLIAMS, ASSOCIATE JUSTICE.—*Opinion*.—The reason which, in the opinion of the majority of the court, requires the reversal of the judgment of the District Court, and the discharge of the garnishees, is the fact, admitted in both pleadings and evidence, that at the time of the service of the garnishment and of the filing of the answers of the garnishees, the latter had in their hands nothing belonging to the judgment debtor but a chose in action, held by them for collection, which was not subject to the operation of the writ. Money which they collected upon the note after they answered was not, in our opinion, reached by the writ previously served. Whether or not this is true depends upon the proper construction of our statute regulating the process.

There is no general rule of the common law which gives to the writ of garnishment the effect of attaching debts or effects in the hands of the garnishees beyond those defined by the statute. The law is to be strictly construed, and "the extent of the garnishee's liability is measured and limited by the express provisions of statutory law." Gause v. Cone, 73 Texas, 241. Equity will not extend the operation of the writ or aid in the enforcement of its objects. Price v. Brady, 21 Texas, 620; Arthur v. Batte, 42 Texas, 161.

None of the decisions of this State have ever asserted that the garnishee can be charged beyond debts owed or effects held at the time of his answer. The furthest they have gone is to hold that he is chargeable

with debts owed or effects held at any time between the service of the writ and the filing of the answer.  Gause v. Cone, supra; Tirrell v. Rice, 25 Texas, 532.  And it has been affirmatively held that he can not be charged beyond that.  B. & B. Co. v. Moore Bros., 4 Willson, sec. 146.

The statute does not affirmatively state the time or stage in the proceedings at which the liability of the garnishee is to be fixed, but we think it does so by necessary implication.  By the writ, the garnishee is required to answer what he is indebted to the defendant and was when the writ was served, and what effects of defendant's he has in his possession and had when the writ was served, and other things as to third persons which are inapplicable here.  Rev. Stats., arts. 220, 221, 226.

When he answers fully the questions so put to him, and shows that at the service he owed nothing and had no effects, and that when he answers he has and owes nothing, he is entitled to his discharge under article 227, unless his answer is controverted "as hereinafter provided."  Thus, in the absence of a controversy, the condition of things at the date of service and of the answer is made the basis of the judgment.  How is it when the answer is controverted?  This is answered by article 245, which provides that the plaintiff may controvert the answer "by an affidavit * * * stating that he has good reason to believe, and does believe, that the answer of the garnishee is incorrect, stating in what particular he believes same is incorrect."  This does not authorize the introduction of anything not covered by the answer as a basis for charging the garnishee, but again restricts the issue to the matter of fact stated in the answer, and allows the plaintiff only to prevent the judgment in favor of garnishee provided in article 227, by traversing some one or more of the facts sworn to by the garnishee.

Article 251 provides that an issue shall be framed under the direction of the court, and tried as other issues; but it is evident that the further pleadings must be built upon the controversy raised by the answer and the controverting affidavit, as their foundation, since it is by the controverting affidavit alone that judgment in favor of the garnishee under article 227 is prevented.

Article 225 prohibits, generally, the garnishee, after service, from paying to the debtor any debt, and from delivering to him any effects, without fixing the period of time during which the prohibition is to last.  As it is not a perpetual restraint, its continuance must depend upon the scope given by the statute to the writ, and this provision does not control the determination of that question.  The duty imposed by it on the garnishee is intended to conserve the right of the creditor acquired by service of the writ, and is as comprehensive as that right, but not more so.

The articles which define the circumstances under which the garnishee may be charged by the judgment contain language which, in the absence of other controlling provisions, might be held to warrant the construction that the condition of things existing when the judgment is rendered is to determine his liability.  In a sense such condition must control.  Article 239 provides:  "Should it be made to appear from the answer of the

garnishee, *   *   * or should it be otherwise made to appear, as herein-after provided, that the garnishee is indebted, or was so indebted when the writ was served," judgment shall be rendered against him.

The use of the present tense in the phrase, "is so indebted," has reference to the time when judgment is to be rendered. But when we look to other provisions, we see that, at the trial, it can only be made to appear by the answer, or otherwise "as hereinafter provided," that the garnishee is indebted, by an admission in his answer that he was so indebted when he answered, or, if the answer has denied such indebtedness, by proof of the fact under the affidavit controverting the truth of such statement. If either answer or proof show the indebtedness to have existed when the answer was filed, it follows that it must exist when judgment is rendered, because the garnishee, in the interval, can not relieve himself of it. So the use of the present tense in the statute is proper in either view that may be taken of the question before us; but it refers only to an indebtedness which existed at the date of the answer, and therefore still exists, and not to the one which has arisen since that date, as is made apparent by the other provisions. The same explanation may be made of article 240, prescribing the judgment where it appears that the garnishee has effects, and of article 242, applying to shares in incorporated or joint stock companies.

It may be said that, as the statute does not limit the time in which the garnishee may file his answer, except that it must be filed on or before the next default day, the construction given would enable him to file it at once, and thus relieve from the writ debts arising or effects coming into his hands between its filing and rendition of judgment. If this is true, it is an advantage or protection which the statute gives him. The statute, in making the writ reach credits or effects existing when the answer is filed, but not when the service was made, gives to it a scope greater than it originally had. Drake on Att., sec. 451a. Whether it should have been extended still further, and made to subject the garnishee to the duty and hazard of properly accounting for everything that comes into his hands after he has once answered, and before judgment, was a question for the Legislature. If the Legislature had intended to create such a duty, it would doubtless have provided for further answers and contests involving the matters subsequently arising.

Applying the rule thus deduced, we find that when the garnishees answered in this case they disclosed nothing subject to the writ. Their answers were true, and were never controverted. The subsequent pleadings of plaintiff seeking to charge them by showing that money had been collected on the chose in action, after the filing of the answer, presented an irrelevant fact. It stated matter which properly belonged to an affidavit for the issuance of a garnishment. Plaintiff could only make an issue upon which to charge the garnishees by showing the incorrectness of their answers, that is, by showing credits or effects in their hands when they answered. And it follows that she showed no ground in this case upon which to make them liable.

To sustain the judgment against them, the court would have to extend, by a most liberal construction of the statute, the operation of this writ, and this it can not do. It is no vain thing to require that the statute be followed. It is by no other means that the garnishee can be adjudged to pay, or be protected in paying, what is in his hands.

The suggestion that, as Finnegan & Co. are before the court, the rights of all parties in the money can be determined, and the garnishees protected, begs the question. Plaintiff has no right to the money, and has only the right to subject it to her claim by following the statute. Until she has done so, she presents no case for adjudication. Nor can the presence of Finnegan & Co. affect the question which we have discussed. If the fund was reached by the garnishment, the court could so adjudge, though they were not parties; and, on the other hand, their becoming parties could not extend the operation of the process so as to make it fix upon the fund, if it had not already done so. It is unnecessary perhaps to say that unless the court, by the process issued, has acquired control of the fund, it has no right, by a mere judgment, to order it paid to the creditor, because it may be of the opinion that it could have been subjected by a proper proceeding.

PLEASANTS, ASSOCIATE JUSTICE.—*Dissenting Opinion.*—The conclusions of this court upon the law are, that there is no reversible error in the proceedings of the lower court, prior to the refusal of that court to discharge the garnishees upon their answers, and that there was error in refusing to sustain the motions of the garnishees praying for their discharge, and for such error the judgment must be reversed; and this court, proceeding to render the judgment which should have been rendered by the trial court, doth adjudge and order that the garnishees, the Planters and Mechanics Bank and James A. Patton, be discharged upon their respective answers, and that the plaintiff, Elizabeth P. Floeck, take nothing by her garnishment, and that both the garnishees and the defendants John Finnegan and Robert E. Paine recover their costs against plaintiff.

In the conclusion of the court upon the facts I fully concur, but I respectfully dissent from the judgment dismissing the garnishees, and denying the plaintiff the recovery of the moneys in their hands collected on the debt due from Gibbons to Alexander, the judgment debtor of the plaintiff. It will not be denied but that the money in the hands of the bank might have been reached by another garnishment sued out by the plaintiff. It is conceded by the findings of this court that the money was Alexander's, the defendant in the original judgment, and was not Finnegan & Co.'s. All parties were before the court, and why require another writ of garnishment? The law does not require a vain thing.

As I construe the statute under which the garnishment proceedings in this case were had, I think the plaintiff was by both the letter and the spirit of the statute entitled to a judgment requiring the garnishee the Planters and Mechanics Bank to pay over the moneys collected upon

the Gibbons notes to her.  Article 245, Revised Statutes, provides, that if the plaintiff be not satisfied with the answer of the garnishee he may controvert the same, by an affidavit in writing, signed by him, that he has good reason to believe, and does believe, that the answer is incorrect, stating in what particular he believes the answer incorrect.  We submit that the sworn supplemental petition was a substantial compliance with this provision of the statute.

The garnishees had answered that they had no effects in their possession belonging to the defendant Alexander.  They admitted that he had placed with them for collection certain promissory notes, but that afterwards he transferred said notes to Finnegan & Co. for a valuable consideration, as they were informed and believed; and that upon notice of said assignment, and the presentation to them by Finnegan & Co. of an order from Alexander to them to pay all moneys collected upon the notes placed with them for collection to Finnegan & Co. they, the garnishees, had agreed and contracted with Finnegan & Co. to collect and pay over the moneys so collected to them, the said Finnegan & Co.  The supplemental petition avers and charges that the assignment of said notes, and the order from Alexander to garnishees to pay the moneys collected on them to Finnegan & Co. were both fraudulent, and made with the intent to defraud plaintiff and other creditors of said Alexander, and that said Finnegan & Co. were parties to said fraud; and in addition, plaintiff averred that, since the filing of the said garnishees' answers, the garnishee Patton had collected a large sum of money upon said notes, and that the same was still in the possession of the garnishees.

Article 239, Revised Statutes, provides, that if it appear from the answer of the garnishee, or should it be otherwise made to appear, as hereinafter provided, that the garnishee is indebted, or was so indebted at the time of service of the garnishment, the court shall render judgment for the plaintiff against the garnishee for the sum admitted or proved to be due from him to the defendant in the original judgment, or for so much thereof as shall be sufficient to satisfy the plaintiff's claim.  The fact that the money, as charged in the supplemental petition, was collected by the garnishee Patton in October, 1892, and by him paid to the bank, the other garnishee, and that it was kept in the bank, and was never paid out to Finnegan & Co., or to any one else, and that it was in the possession of the bank at the time of the trial and judgment, are all facts established by the evidence beyond controversy and are not denied or questioned by this court, and that the transfer to Finnegan & Co. by Alexander was fraudulent is a conclusion which this court by its findings of fact says is warranted by the evidence.

We think there was a substantial compliance with the statute in the garnishment proceedings, and that the judgment of the lower court should be affirmed, in so far as it gave judgment against the plaintiff for the money in the hands of the garnishee and for costs against both the garnishee the Planters and Mechanics Bank and the defendants Finnegan & Co.  It is true that the notes in the hands of the garnishees, when

the writ was served upon them, were not subject to garnishment, choses in action, under a long line of decisions, not being assets, as that term is used in statutes regulating garnishments, and that it is for this reason, as I understand them, that my associates hold that the plaintiff should not recover.

Proceedings in garnishment by a judgment debtor, I submit, should not be controlled by the same statutes as are proceedings in attachment or garnishment before the plaintiff has obtained judgment for his debt. In the latter case, the court, upon the affidavit of the plaintiff that the statutory grounds for the writ exists, and when the allegation that the defendant is indebted to plaintiff has not yet been judicially determined, takes from the possession of the defendant his property. But in garnishment, after judgment, the writ issues to aid the plaintiff in the collection of his judgment, only after the common law writs of execution have failed to accomplish their purpose against an insolvent and perhaps fraudulent debtor. Such proceedings are remedial, and should be liberally and not strictly construed.

I confess my inability to distinguish between the principle upon which judgment was rendered for the plaintiff in the case of Thompson v. Gainesville National Bank, 66 Texas, 156, and that involved in this case. If one who is indebted upon a negotiable note to the plaintiff's judgment debtor at the time he is served with garnishment, and who answers that he is not indebted, the note not being then due, but who, after the note matures, and before judgment is rendered in the garnishment, pays it to the payee, the judgment debtor, is held liable for the amount so paid, to the plaintiff, why may not a trustee of the judgment debtor, who when garnished has in his hands for collection notes belonging to the debtor, and who so answers, and afterwards collects the money due upon the notes, and has it in his hands when judgment is rendered in the garnishment, be required to pay the same to the plaintiff?

*Reversed.*

Writ of error refused.