HATLEY v. WEST TEXAS NAT. BANK OF BIG SPRING. (No. 1716.)

(Court of Civil Appeals of Texas. El Paso. April 23, 1925. Rehearing Denied June 4, 1925.)

1. **Garnishment** ⊂═2 —Statute to be strictly construed.

The garnishment law is to be strictly construed.

2. **Garnishment** ⊂═105—Extent of garnishee's liability limited by express provisions of statutes.

The extent of garnishee's liability is measured and limited by the express provisions of the statutes.

3. **Garnishment** ⊂═109—Only debts owing by garnishee to defendant, and effects belonging to defendant in garnishee's' hands, are impounded.

Under Rev. St. arts. 273, 274, 276, 281, and article 293, as amended by Acts 37th Leg. (1921) c. 105, § 3 (Vernon's Ann. Civ. St. Supp. 1922, art. 293), and Rev. St. art. 294, garnishment proceedings impound only those debts owing by the garnishee to the defendant and those effects belonging to defendant in the hands of the garnishee, and do not prohibit garnishee from paying to defendant debt due defendant by third person, or from delivering to defendant effects belonging to third person, notwithstanding article 279, making it unlawful "for the garnishee to pay to the defendant any debt or to deliver to him any effects."

4. **Assignments** ⊂═49 — Bank not liable on check until accepted or certified.

Under Uniform Negotiable Instruments Act, § 189 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—189), bank on which check has been drawn is not liable to holder on theory of an equitable assignment pro tanto, or otherwise, until it accepts or certifies check.

---

⊂═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Appeal and error ☞361(5) — Supreme Court's approval of ruling of Court of Civil Appeals assumed on refusal of writ of error.**

It must be assumed that the Supreme Court, in refusing writ of error to review judgment of Court of Civil Appeals, approved the ruling of such court.

**6. Garnishment ☞38—Check left with bank, on bank's refusal to pay for want of funds, held not subject to garnishment.**

Bank with which check was left, on bank's refusal to cash check for want of funds, did not, by surrender of check after it was garnisheed in action against payee, become liable to plaintiff in such action, since check was a mere chose in action against the drawer, and not subject to garnishment in hands of bank.

**7. Garnishment ☞109—Bank garnishee's payment of check to defendant payee did not render bank liable to plaintiff.**

Bank garnishee's payment of check to defendant payee did not render garnishee liable to plaintiff, since payment of check was not discharge of obligation which bank owed payee, in view of Uniform Negotiable Instruments Act, § 189 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—189), but discharged debt of drawer.

**8. Garnishment ☞164—Proof that garnishee bank, in payment of check payable to defendant, gave cashier's check, held insufficient to render bank liable.**

Proof that garnishee bank, on presentation of check payable to defendant, gave defendant's wife a cashier's check, *held* not sufficient to prove bank liable to plaintiff, in the absence of proof that cashier's check was made payable to defendant, or that such check, if payable to defendant, had not passed into the hands of a holder in due course.

**9. Garnishment ☞162—Plaintiff, to hold obligor on negotiable instrument liable in garnishment, has burden of proving facts subjecting debt to garnishment.**

Debts evidenced by negotiable instruments under some circumstances are garnishable, but, in order to hold obligor liable in garnishment, the burden is on the plaintiff to prove a state of facts showing that such debt is subject to the garnishment.

**10. Garnishment ☞109—Bank, having acted within its legal right in surrender of check and subsequent payment thereof, could not be held liable on ground of collusion and fraud.**

Bank's surrender of check to payee after garnishment, and subsequent payment to payee's wife, did not render bank liable to plaintiff on theory that surrender of check and subsequent payment was collusive and a fraud on plaintiff's rights, since bank acted within its legal right.

Appeal from Howard County Court; H. R. Debenport, Judge.

Suit by Troy Hatley against J. W. White, and the West Texas National Bank of Big Spring, garnishee. From judgment giving him insufficient relief against garnishee, plaintiff appeals. Affirmed.

G. B. Cunningham and Clyde E. Thomas, both of Big Spring, for appellant.

Morrison & Morrison, of Big Spring, for appellee.

Statement of Case.

HIGGINS, J. The appellant, Hatley, sued J. W. White and garnished the appellee, West Texas National Bank of Big Spring, the writ being served at 11:20 a. m. December 5, 1923. Judgment was rendered December 12, 1923, in Hatley's favor against White for $500 with interest. The garnishee answered, admitting it had a deposit of $128.08 to the credit of White, and denied any further indebtedness. Negative answers were made to the other inquiries of the writ. The answer was controverted by Hatley. Upon trial, the court, by peremptory instruction, limited appellant's recovery to the said sum of $128.08.

White owned a barber shop in Big Spring which he agreed to sell to G. E. McNew. Sam Eason was in some manner interested with McNew in the purchase. McNew did not have the money to pay for the shop, and on the morning of December 5th he arranged with appellee to borrow the necessary sum. Robert Piner, appellee's cashier, acted for it in the agreement to make the loan. Piner agreed to make the loan if Eason would sign the note with McNew. The arrangement between the bank and McNew was made prior to service of the writ. McNew immediately signed the note and left it with Piner to await Eason's signature. The money was not to be passed to McNew's credit until Eason signed the note. As soon as McNew made the arrangement with Piner, he drew his check for $2,400 upon appellee in favor of White, and delivered the same to White. White thereupon delivered to McNew a bill of sale for the shop, and the latter at once took possession. Upon receiving the check, White immediately presented it for payment to appellee's assistant cashier, S. D. Ford, who testified:

"He presented a check for that amount, but I explained to him that I could not cash it for the reason arrangements had not been made for the money. Mr. Piner told me the arrangements had not been made. I told Mr. White I thought the arrangements would be made, and that the check would be good, but that I could not cash it then. He left the check, and I gave him a receipt for it. I did not give him a regular deposit slip for the money, but merely a receipt for the check. The receipt was not on the regular deposit slip used showing deposit of money, but just a receipt for the check. I don't know what became of the check; it was gone when I got back from lunch. Queen White, who I understood was the wife of J. W. White, presented the check the next day. It had J. W. White's indorsement on it when presented. Out of the $2,400, she paid $64.63 on indebtedness we held for collection against J. W. White, gave her a cashier's check for

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

$2,235.37, and $100 in money.  *  *  *  It is the custom of the bank, when checks are presented, to pay them, unless the account on which they are drawn have been garnished. This check was on G. E. McNew's funds. His account had not been garnished.  *  *  *"

Mr. Piner testified:

"G. E. McNew applied to the bank for a loan of $2,400. He told me he and Sam Eason wanted to purchase a barber shop. He told me Sam Eason would sign the note with him. I told him he could have the money if Sam Eason would sign the note. He signed it then, but I did not give him credit for the amount for the reason Sam Eason had not signed it. When I got back from dinner, J. W. White and J. J. Hare, who is vice president of the bank, were discussing the check. One of them had the check, and they told me the writ of garnishment had been served on the bank. I don't know what became of the check, but presume White carried it away with him. I did not see it any more till to-day. When White presented the check that morning, it could not be paid because there were no funds available. Eason had not signed the note. At the time the check was cashed, McNew's funds had not been garnished. White did not present the check to me. I did not consult any one about the matter. Had the check been presented to me, I would have paid it had the funds been in the bank. I did not deliver the check to White but I see no reason why I should not have done so. as it was worthless. It couldn't be paid, as McNew did not have the funds with which it could be paid.  *  *  *  Ford did not consult me with reference to cashing the check. I would have thought we had a right to cash the check. The bank was not indebted to White, except $124.  *  *  *  Sam came over late that afternoon, but I am not sure whether it was just before the bank closed or just afterwards. After Sam signed the note, I placed the proceeds to the credit of G. E. McNew. Eason agreed that it should be placed to McNew's credit."

The Whites left Big Spring after the check was cashed and seem to have disappeared. The judgment in the garnishment proceeding was rendered December 13, 1923.

### Opinion.

[1, 2] 1. The garnishment law is strictly construed. "The extent of the garnishee's liability is measured and limited by the express provisions of statutory law." Gause v. Cone, 73 Tex. 241, 11 S. W. 163; Bank v. Floeck, 17 Tex. Civ. App. 418, 43 S. W. 589; Shropshire v. Bank (Tex. Civ. App.) 196 S. W. 977.

In the affidavit for the writ, the plaintiff is required to state that he has reason to believe and does believe that the garnishee "is indebted to the defendant, or that he has in his hands effects belonging to the defendant." Article 273, R. S. The writ requires of the garnishee disclosure of "what, if anything, he is indebted to the defendant, and was when such writ was served, and what

effects, if any, of the defendant he has in his possession, and had when such writ was served." Articles 274 and 276, R. S. From and after service of the writ "it shall not be lawful for the garnishee to pay to the defendant any debt or to deliver to him any effects." Article 279, R. S.

"Should it appear from the answer of the garnishee that he is 'not indebted to the defendant, and was not so indebted when the writ of garnishment was served on him, and that he has not in his possession any effects of the defendant and had not when the writ was served  *  *  *  the court shall enter judgment discharging the garnishee." Article 281, R. S.

"Should it appear from the answer of the garnishee or should it be otherwise made to appear and be found by the court that the garnishee is indebted to the defendant in any amount, or was so indebted when the writ of garnishment was served, the court shall render judgment for the plaintiff against the garnishee for the amount so admitted or found to be due to the defendant from the garnishee," not to exceed the amount of the judgment in the main case. Article 293, R. S., as amended by chapter 105, § 3, Acts 37th Leg. Reg. Sess. (Vernon's Ann. Civ. St. Supp. 1922, art. 293).

"Should it appear from the garnishee's answer, or otherwise, that the garnishee has in his possession, or had when the writ was served, any effects of the defendant liable to execution, the court shall render a decree requiring the garnishee to deliver up to the sheriff or any constable presenting an execution in favor of the plaintiff against the defendant, such effects or so much of them as may be necessary to satisfy such execution." Article 294, R. S.

[3] These provisions of the garnishment law plainly impound only those debts owing by the garnishee to the defendant and those effects belonging to him in the hands of the garnishee.

Article 279 is broader in its terms than the other sections of the law. Standing alone and giving literal effect thereto, it would prohibit the garnishee from paying to the defendant a debt due such defendant by a third person or delivering to him any effects belonging to a third person. But the various sections should be construed together. So construing the same, we think article 279 relates only to those debts and effects which the other sections impound. If article 279 were given a literal application, it would in some cases adversely affect the rights of strangers to the proceedings.

[4, 5] 2. It is apparent the check was in the possession of the bank when the writ was served, and some time subsequent to service the same was surrendered to White. The question which first arises is whether such surrender renders the appellee liable. A bank upon which a check has been drawn is not liable upon the check to the payee unless and until it accepts or certifies the same. Section 189, Uniform Negotiable In-

struments Act (Vernon's Ann. Civ. St. Supp. 1922, art. 6001–189). Nor does it, under the Uniform Negotiable Instrument Act, become liable to the holder upon the theory of an equitable assignment pro tanto of the funds to the credit of the drawer until it accepts or certifies the check. This was directly held by the Austin Court of Civil Appeals in Central, etc., v. First National Bank, 243 S. W. 998. A writ of error was applied for in that case and the question presented to the Supreme Court in the application. The writ was refused, and it must be assumed the Supreme Court approved the ruling of the Austin court. 246 S. W. 111. So, at the time the bank surrendered the check to White, it was but the mere evidence of an obligation owing by the drawer, McNew, to White. It has been several times held that negotiable notes in the possession of the garnishee, belonging to the principal defendant, are mere choses in action and not garnishable as effects belonging to the defendant. Price v. Brady, 21 Tex. 614; Taylor v. Gillean, 23 Tex. 508; Ellison v. Tuttle, 26 Tex. 283; Tirrell v. Canada, 25 Tex. 456; Hutcheson v. King, 17 Tex. Civ. App. 151, 83 S. W. 215; Bank v. Floeck, supra.

[6] So in the present case the check was a mere chose in action against the drawer, and not subject to garnishment in the hands of the bank. Therefore its surrender to White subsequent to service of the writ imposed no liability upon the bank.

[7] 3. As heretofore indicated, the bank never, upon any theory, became indebted to White upon the McNew check. Section 189, U. N. I. A.; Central, etc., v. First National Bank, supra. Had the bank dishonored the check after the proceeds of McNew-Eason note had been passed to the credit of McNew, the holder of the check could not have maintained an action against the bank. Until the check was actually paid, it was a mere chose in action against the drawer. When the bank paid the check, it discharged no obligation which it owed the holder but a debt of the drawer. The garnishment had not impounded that debt. If that debt was garnishable, the garnishment must have been against McNew. Therefore the garnishee incurred no liability by the payment. This conclusion renders it unnecessary to determine whether Mrs. White, to whom the payment was made, succeeded to any greater right than the original payee, for payment direct to White would have imposed no liability upon the garnishee.

4. Up until the time the check was paid, the relation of the bank with respect to the McNew deposit and the various parties was simply that of debtor to McNew. When payment was made, that relation ceased.

[8, 9] In part payment the bank gave Mrs. White a cashier's check for $2,235.37. Upon this check the bank became liable to the payee, but the record does not disclose the payee. No liability to J. W. White upon the check is shown. If it were assumed that White was the payee, or that Mrs. White was the payee, and the debt which it evidenced, subject to the payment of White's indebtedness to Hatley, nevertheless that of itself was insufficient to hold the garnishee liable. While debts evidenced by negotiable instruments under some circumstances, are garnishable in this state (Thompson v. Bank, 66 Tex. 156, 18 S. W. 350; Moursund v. Priess, 84 Tex. 554, 19 S. W. 775; Hutcheson v. King, 37 Tex. Civ. App. 151, 83 S. W. 215) nevertheless, in order to hold the obligor upon a negotiable instrument liable in garnishment, the burden is upon the plaintiff to prove a state of facts showing that such debt is subject to the garnishment. Railway v. Terry, 50 Tex. 129; Thompson v. Bank, 66 Tex. 156, 18 S. W. 350.

Whoever may have been the payee of the cashier's check, it may have passed into the hands of a holder in due course whose right would be superior. The record thus wholly fails to show that the obligation incurred upon the cashier's check was subject to the writ of garnishment.

[10] 5. The appellant in his brief presents a theory which seems to assert that the surrender of the McNew check to White and its subsequent payment to Mrs. White was collusive and a fraud upon his rights. But, under our view of the law, all the bank did was within its legal right and therefore, cannot possibly be regarded as in fraud of any right of the appellant.

Affirmed.