## MAYFIELD CO. v. FIRST NAT. BANK OF TERRELL et al.  (No. 374.)

(Court of Civil Appeals of Texas. Waco. Oct. 14, 1926.)

**1. Banks and banking ⬤⟞127—Whether bank's receiving draft drawn by depositor on customer in another town and crediting drawer's account passed title to draft was question of intent of parties to be determined from evidence.**

Where bank received draft drawn on consignee named in bill of lading attached and credited drawer's current checking account with understanding that drawer would reimburse bank if draft was not paid, whether title to draft passed at that time was a question of intention of parties to be determined from evidence.

**2. Banks and banking ⬤⟞127—That draft was payable direct to bank and credit given to drawer's current checking account was not conclusive that title to draft and its proceeds were intended to pass to bank.**

That draft drawn on consignee named in bill of lading attached was payable direct to bank and credit given to drawer's checking account was not conclusive that title to draft and its proceeds were intended to pass to bank, where bank took it subject to its presentation for payment and charged drawer interest until proceeds of draft were received.

**3. Garnishment ⬤⟞171.**

Where proceeds of draft were garnished as property of drawer and forwarding bank had credited drawer's checking account, evidence raised issue of fact for jury as to ownership of proceeds of draft.

Stanford, J., dissenting.

Appeal from District Court, Kaufman County; Joel R. Bond, Judge.

Garnishment proceeding by the Mayfield Company against the Hale Company, defendant, and the First National Bank of Terrell, garnishee. The American National Bank of San Francisco made itself a party to the proceedings, as successor to the American National Bank, which had claimed the proceeds of the draft impounded and had been made a party to the suit. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

Wynne & Wynne, of Kaufman, and Bullock & Ramey, of Tyler, for appellant.

J. Pat Coon and Thos. R. Bond, both of Terrel, for appellees.

GALLAGHER, C. J. The Mayfield Company, appellant herein, sued the Hale Company, a foreign corporation, to recover the sum of $1,132.26 and at the same time sued out a writ of garnishment against appellee First National Bank of Terrell, alleging that it was indebted to said Hale Company.

The record discloses that the Hale Company sold a carload of beans to the Mayfield Company for the sum of $3,813.81; that it attached an invoice thereof, together with a railroad bill of lading therefor, to a draft drawn by it on the Mayfield Company in favor of the American National Bank of San Francisco for the amount of said invoice; that it delivered said draft to said bank and received credit therefor in its current checking account; that said American National Bank indorsed said draft and sent the same, with the papers attached thereto, to the First National Bank of Terrell, to be there presented to the Mayfield Company for payment, and instructed said Terrell bank to remit the proceeds, when collected, to the Boatmen's Bank of St. Louis to be credited to said San Francisco bank. The Terrell bank presented

said draft to the Mayfield Company, which promptly paid the same. After the proceeds of said draft were impounded by the service of the writ of garnishment herein, the San Francisco bank gave the Terrell bank a bond of indemnity, in consideration of which the Terrell bank remitted the entire proceeds of said draft to the St. Louis bank, as originally instructed. The Terrell bank made said American National Bank of San Francisco a party to the suit. During the pendency of the suit, said San Francisco bank was succeeded by the American Bank of San Francisco, and that bank made itself a party to the garnishment proceeding instead of said original San Francisco bank.

The Mayfield Company recovered a judgment against the Hale Company and the garnishment proceeding came on for trial. The Mayfield Company, plaintiff in garnishment, alleged that said draft was delivered to the San Francisco bank for collection and that the proceeds of the same in the hands of the garnishee when said writ was served were the property of the Hale Company. The American Bank assumed the burden of the defense and alleged that its predecessor, the American National Bank, purchased said draft with the papers attached thereto from the Hale Company and gave said company unrestricted credit at the time of purchase for the amount thereof; that said Hale Company was liable to it only in event said draft was not paid by the Mayfield Company, upon which it was drawn; that said draft was duly paid when presented; that said Hale Company was thereby released from all liability to said American National Bank on account thereof; and that the proceeds of said draft were the property of said bank and not the property of the Hale Company, at the time the writ of garnishment was served.

The case was tried before a jury. At the close of the evidence, the court instructed a verdict for the defendants and rendered judgment in accordance with said verdict.

## Opinion.

[1] Appellant contends that the court erred in instructing a verdict against it. The only witness who testified to the circumstances attending the delivery of said draft to the San Francisco bank, and the entry of credit therefor in the account of the Hale Company, was a Mr. Sanborn, who testified that he was vice president of the bank at that time and that he held the same position in the American Bank, which succeeded to the assets of the original San Francisco bank. He testified by deposition, taken at the instance of appellant. His testimony was in part as follows:

"I am familiar with the transactions involved in this matter. * * * Yes; the Hale Company was a regular customer of our bank and had a deposit account with us. Well, it was the ordinary commercial account, statement of debits and credits covering transactions passing through it. * * * We had no general or specific understanding or agreement with the Hale Company, at the time of the transaction in question, as to the manner in which the proceeds of drafts, such as the one in question, were to be handled; merely, in the ordinary course of events, they were given credit for the item, subject to its presentation for payment. Proceeds of the draft unpaid [when paid] were to reimburse us for the amounts advanced. There was no agreement in writing. This agreement was all in regular routine according to general bank practice, just as we handle entries of these items every day. * * * The Hale Company was given credit for the amount indicated and had full privilege to draw against any funds to their credit. * * * Yes; there was an agreement between the Hale Company and the American National Bank that the Hale Company should pay interest to our bank upon the amount of said draft from the time it was deposited in our bank until remittance of the proceeds thereof to said bank by the collecting bank. We collect interest for the amount of our advance during the time it is outstanding. The nature of the agreement or understanding our bank had with the Hale Company with reference to charging up the item in question to the Hale Company, in event such draft should not be paid by the drawee, was that it would be under the general warranty that the drawer of a draft would reimburse us in the event the payee declined to pay on presentation, which, however, was not the case as the draft was paid by the payee. There was no discount charged by the bank for handling the item in question. Our rate of interest was 6½ per cent. on the advance made during the time it was outstanding. We actually did charge interest for the time the funds were outstanding, a total of $40.77. The amount advanced Hale Company on account of the draft in question was $3,813.81. We must have been familiar with the financial status, in general, of the Hale Company during the period of time intervening from January to June, 1923, to have made the credits above extended. In our judgment, at that time Hale Company was wholly solvent and financially responsible. * * * This was an entirely independent transaction. The Hale Company brought us in a draft for which we gave them credit, and it had no relation to any other obligation whatever."

Said witness further testified that the credit or balance in favor of the Hale Company at the close of business on January 13th, the day said draft was delivered to the bank and credit therefor entered in the account of the Hale Company, was $45,170.75. In this connection, he further testified as follows:

"In answer to the question requesting that I attach hereto, mark, and identify exact copies from the books and ledgers of our bank of the account of the Hale Company, showing deposits made by the Hale Company with our bank as well as all checks and charges against the same during the time intervening from the 10th of January, 1923, to the 10th of May, 1923, I would say that a statement of the account of

the Hale Company covering the period from January 10, 1923, to May 10, 1923, would show various debits and credits without any explanation as to the character of the items, and for that reason, unless there is some special need for their production, does not seem to have any particular bearing upon this action."

Whether the title to the draft under consideration in this case passed to the San Francisco bank at the time said bank received the same and credited the account of the Hale Company with the amount thereof depends upon the intent of the parties to said transaction at the time it occurred, and such intention is a question of fact to be determined from the evidence. Heid Bros. v. Commercial Nat. Bank (Tex. Com. App.) 240 S. W. 908, 24 A. L. R. 904; Commercial Nat. Bank v. Heid Bros. (Tex. Civ. App.) 257 S. W. 913 (writ dismissed); Howe Grain & Mercantile Co. v. A. B. Crouch Grain Co. (Tex. Civ. App.) 211 S. W. 946, 948 (writ refused); 3 R. C. L. pp. 632, 633, § 261; 11 A. L. R. note, page 1045; 47 L. R. A. (N. S.) note, pages 552, 553; Fayette Nat. Bank v. Summers, 105 Va. 689, 54 S. E. 862, 7 L. R. A. (N. S.) 694 and note.

[2] The evidence in this case does not show an express agreement that said draft was accepted for deposit as cash, nor that the title to said draft should pass to the San Francisco bank. Neither does it show an express agreement that said draft was taken for collection. The intent of the parties in said transaction must be gathered from a consideration of all the circumstances attending the same. The fact that the draft was payable direct to the bank and credit therefor given the Hale Company in its current checking account is not conclusive that title to said draft and the proceeds of the same, when collected, were intended to pass to said bank. Heid Bros. v. Commercial Nat. Bank, supra; Commercial Nat. Bank v. Heid Bros., supra. The vice president of said bank testified that said draft was accepted and credited, "subject to its presentation for payment." He spoke of the credit given therefor as an "advancement," and said that the bank was to be reimbursed out of the proceeds of the draft when paid. He further stated that there was an agreement that the Hale Company would reimburse the bank, if said draft was not paid on presentation. All these qualifications tended to show that the credit in favor of the Hale Company, in its account with said bank, was tentative and for convenience only, and that the same was dependent on the ultimate payment of said draft. The evidence shows that the balance in favor of the Hale Company in its current checking account was, at the close of business on the day said draft was deposited, more than ten times the amount of said draft. There was no contention that the money represented by the credit given on the deposit of said draft was ever drawn from the bank. Its vice

president, on being asked to give the status of said account day by day up to the date of the service of the writ of garnishment, said, in substance, that such account showed a succession of debits and credits and that he deemed a detailed statement thereof immaterial to any issue in the case.

[3] In addition to the foregoing facts, it was shown affirmatively that the bank charged and the Hale Company agreed to pay and did pay interest on the amount of said credit, until the proceeds of said draft were returned to said bank. This was, in itself, a circumstance tending to show that the bank held said draft for collection and not by purchase and absolute ownership. First Nat. Bank of Roswell v. Smith Bros. Grain Co. (Tex. Civ. App.) 276 S. W. 951, 953. We think the evidence in this case, under the authorities above cited, raised an issue of fact as to the ownership of said draft and of the proceeds of the same when paid, and that such issue should have been submitted to the jury for determination. See, also, 11 A. L. R. pages 1054 to 1060, inclusive, note 4, subdivision (a). The attending circumstances in evidence in this case show something more than the mere deposit of the draft and the giving of credit therefor in a current checking account, and they make the rule relied on by appellees and the authorities cited by them inapplicable.

Appellant offered in evidence and the court excluded a printed slip purporting to have been issued by the Hale Company and found in the Terrell bank in the package of papers pertaining to this particular collection, and containing instructions concerning the manner of handling the collection and a request that certain Dallas brokers be notified, in case the draft was dishonored. We think a sufficient predicate was laid and that the court erred in refusing to admit said slip in evidence.

The judgment of the trial court is reversed and the cause is remanded.

STANFORD, J. Not being able to agree with my associates in the disposition of this appeal, I hereby file the following dissenting opinion:

The only question involved is: Was the trial court in error in instructing a verdict for the appellees? The evidence upon the trial, as shown by the majority opinion, was brief and uncontroverted. Plaintiff in garnishment has no better right against the garnishee than his judgment debtor, and, if nothing is owing to the latter, the former is entitled to nothing. Hall v. Nunn Electric Co. (Tex. Civ. App.) 183 S. W. 13 (error refused); Smith v. Houston Exchange Bank (Tex. Civ. App.) 202 S. W. 181. If this suit was being prosecuted by the Hale Company against the garnishee, the First National Bank of Terrell, to recover the $3,813.81, the proceeds of the draft in question, under the

evidence in this case would there be any issue of fact for a jury? There is no controversy about the following essential facts: The draft was drawn by the Hale Company, payable to the San Francisco bank. The Hale Company delivered this draft with the bill of lading, etc., attached, to said bank and, on receipt of same, the San Francisco bank gave the Hale Company an unrestricted credit, subject to check, for $3,813.81, the face value of said draft. As far as the record shows, the Hale Company accepted said deposit and checked out and used same. This is not a suit for accounting or settlement between the Hale Company and the San Francisco bank, but is a garnishment proceeding strictly. The only issue that could properly be determined was whether the garnishee, the Terrell bank, was indebted to the Hale Company, the defendant in the main suit. The proceeding is strictly statutory, the issues to be determined in such proceeding are clearly defined by the statute, and it is well established that the rules of equity have no place in such exclusively statutory proceeding and that such aid cannot be invoked therein. Article 4094, Revised Statutes 1925; Railway Co. v. Terry, 50 Tex. 135; Bank v. Floeck, 17 Tex. Civ. App. 418, 43 S. W. 589; Hetley v. West Texas National Bank (Tex. Civ. App.) 272 S. W. 571, and cases cited. If this suit were being prosecuted by the Hale Company against the Terrell bank and the San Francisco bank, no court would hesitate to hold said company had failed to make out a case.

Another well-established principle of law applicable to this case, as stated by our Supreme Court in Mensing v. Engelke, 67 Tex. 532, 4 S. W. 202, is as follows:

"It is a cardinal principle in the law of garnishment that the service of the writ cannot have the effect of changing the nature of a contract between the defendant and the garnishee. Baltimore & O. R. Co. v. Wheeler, 18 Md. 372. The attaching creditor stands upon no higher footing than his debtor in relation to the garnishee, and he cannot compel the latter to violate his contract for the purpose of creating a fund for the benefit of the plaintiff which would not exist, in case the contract were faithfully carried out according to its terms and its true intent and meaning." Mensing v. Engelke, 67 Tex. 532, 4 S. W. 202; McClellan v. Routh, 15 Tex. Civ. App. 344, 39 S. W. 607; Medley v. American Radiator Co., 27 Tex. Civ. App. 384, 66 S. W. 86; Presnall et al. v. Stockyards National Bank (Tex. Civ. App.) 151 S. W. 873; Hall v. Nunn Electric Co., supra.

After the draft for $3,813.81 drawn by the Hale Company, made payable to the San Francisco bank, with invoice, weight certificate, and bill of lading attached, was delivered to said San Francisco bank and said bank had given the Hale Company credit, subject to its check, for $3,813.81, as above stated, said San Francisco bank sent said

287 S.W.—33

draft with the other papers attached direct to the First National Bank of Terrell, Tex., for collection. That the San Francisco bank considered same as its own collection is evidenced by the fact that it gave the Hale Company a credit subject to check for the amount of said draft. That it so considered same is further shown by the fact that the San Francisco bank inclosed with said draft its instructions to the Terrell bank as follows:

"Remit proceeds to Boatmen's Bank, St. Louis, Mo., for our credit and advise."

The Terrell bank having received said draft from the San Francisco bank, said draft being payable to and duly indorsed by it with specific instructions to collect and remit to Boatmen's Bank, St. Louis, Mo., for credit to the San Francisco bank, and the Terrell bank, under said instructions, having made said collection, became obligated to comply with said instructions and was not at liberty to do otherwise, which establishes the fact that the Terrell bank in making said collection did so as the agent of the San Francisco bank, and the payment to the Terrell bank had the same effect in law as if the draft had been paid direct to the San Francisco bank. Provident National Bank v. Cairo Flour Co. (Tex. Civ. App.) 226 S. W. 499. The burden was upon appellant to show by pleading and evidence that the funds in the possession of the garnishee were not the property of the San Francisco bank, but were the property of the Hale Company. Ellison v. Tuttle, 26 Tex. 283; East Line & R. R. Co. v. Terry, 50 Tex. 129; Scheuber v. Simmons, 2 Tex. Civ. App. 672, 22 S. W. 72; Smith v. National Bank (Tex. Civ. App.) 40 S. W. 1038; Silsbee State Bank v. Grocery Co. (Tex. Civ. App.) 133 S. W. 713; Denison Bank v. People's Bank (Tex. Civ. App.) 218 S. W. 561; Provident National Bank v. Cairo Flour Co. (Tex. Civ. App.) 226 S. W. 503; South Texas Bank v. Texas, etc., Lumber Co., 30 Tex. Civ. App. 412, 70 S. W. 769.

Under the facts of this case if the contract between the Hale Company and the San Francisco bank was only a conditional sale, as contended by appellant—a sale conditioned upon said draft being paid—as said draft was paid, said sale had become absolute, an executed contract of sale, before the writ was served and the proceeds had become the property of the San Francisco bank. The transaction must be viewed as the facts existed January 26, 1923, the date on which the writ was served. The fact that the garnishee had not had time to remit the proceeds of said draft to Boatmen's Bank of St Louis, Mo., for credit to the San Francisco bank, as instructed by said last-named bank at the time the writ was served, is immaterial. Neither the beneficial ownership of said draft by the San Francisco bank nor the ownership of the proceeds of said

draft could be affected by the fact that the garnishee, the Terrell bank, was served with a writ of garnishment before said bank had time to make remittance as instructed or to make the proper entry on its own books. Bank v. Armstrong, 148 U. S. 50, 13 S. Ct. 533, 37 L. Ed. 363; Heid Bros. v. Commercial Nat. Bank (Tex. Com. App.) 240 S. W. 911. Furthermore, if the contract between the Hale Company and the San Francisco bank was that said bank would advance to the Hale Company the amount of said draft and take said draft as collateral and collect same, and thereby reimburse itself, as said bank did make said advancement and did take possession and control of said draft, and through its agent, the Terrell bank, did collect said draft, said contract or agreement between the Hale Company and the San Francisco bank thereby became an executed one, and the proceeds of the draft became the property of the San Francisco bank and automatically extinguished said advancement

Whether the transaction between the Hale Company and the San Francisco bank amounted to an absolute sale to the bank or a conditional sale—conditioned upon its payment on presentation by the bank—or an advancement to the Hale Company by said bank upon said draft as collateral security, it is thought is immaterial. We do know from the uncontradicted evidence, both documentary and oral, that by said transaction the legal title to said draft was placed in the San Francisco bank; that possession of said draft was given to said bank; that said bank gave the Hale Company credit, subject to check, for the amount of said draft; that it was agreed or understood that the San Francisco bank would collect said draft, if it could, and apply the proceeds to its reimbursement for the $3,813.81 credit so given the Hale Company; that the San Francisco bank by its agent, the Terrell bank, did collect said draft; and that by reason of the above uncontroverted facts, the San Francisco bank, before its payment, became the beneficial owner of said draft, and after its payment, was the owner of or had a lien upon the proceeds of said draft in the possession of its agent, the Terrell bank, and had the right to have said proceeds applied to its reimbursement for the $3,813.81 credit it had given the Hale Company, in accordance with its agreement with said company, regardless of the amount of funds said Hale Company may have had on deposit with said bank. See cases cited, supra. There is no question in this case of any fraud or collusion between the San Francisco bank and the Hale Company. The facts, as above stated, are not contradicted by any circumstances of any probative force. The credit was given by the San Francisco bank to the Hale Company for the full amount of said draft, $3,813.81, on January 13, 1923. Said draft was paid

January 26, 1923, so said bank was out the use of said money for 13 days, and so charged the Hale Company interest on said amount for said time at 6½ per cent. If said bank had known just how long it would take to collect this draft, doubtless it would have discounted same at 6½ per cent. for said time, but from the very nature of the transaction it could not know how long it would take, so said bank charged interest for the time intervening between the date of the credit and the collection, and its so doing is not inconsistent with its purchase of said draft or its taking same as collateral security. The vice president of the San Francisco bank testified that said bank gave the credit and took said draft subject to presentment for payment, meaning, evidently, subject to its payment, for he repeatedly stated that if its payment was refused, the bank had the right to charge it back, and this right to charge back, if payment was refused, is not inconsistent with a conditional sale or a purchase conditioned upon its payment, or that the bank held it as collateral to the $3,813.81 credit given.

Appellant offered in evidence a blue slip of collection instructions by the Hale Company, found among the collection papers, very similar to the pink slip of instruction by the San Francisco bank. This blue slip was excluded by the trial court and this action of the court is assigned as error. It is thought the court was in error in this, but such error was harmless. The Hale Company was interested in this draft being paid in that, if it was not paid, the bank had the right to charge it back to them, and if the Hale Company, in order to facilitate the payment of said draft, attached collection instructions, its so doing was not inconsistent with the fact that the San Francisco bank was the beneficial owner of said draft. The intention of the parties to a transaction may or may not be a question of fact, according to whether or not the undisputed facts attending such transaction leave such intention in doubt. Mr. Sanborn testified, as shown by his evidence copied in the majority opinion, as follows:

"Proceeds of the draft when paid were to reimburse us for the amount advanced,"

—and this is the only reasonable conclusion that can be drawn from the admitted facts attending the transaction, and this being true, as above stated, it is immaterial whether title to the draft vested absolutely in the San Francisco bank at the time same was delivered to said bank and the credit given, or whether title vested in said bank conditioned upon its being paid, or whether said bank took said draft as collateral security for said advancement. In either event, the bank became the beneficial owner of said draft and had the right to have the proceeds applied to its reimbursement for the $3,813.81 so advanced to the Hale Company, as per its

agreement with said company. There was and could be, under the pleadings, no issue as to whether the San Francisco bank was indebted to the Hale Company. The only issue was whether the $3,813.81 in the possession of the Terrell bank belonged to the Hale Company. If the law should ever be declared to the effect that banks are not entitled to protect themselves in the manner shown here for advancements made to facilitate the handling of grain, cotton, and other products in large quantities, such holding would certainly greatly hamper the marketing of such products. It is thought this case is distinguishable from the case of Heid Bros. v. Commercial National Bank (Tex. Com. App.) 240 S. W. 908, in several particulars. For a very thorough discussion of the questions involved in this case and citation of authorities, see Acme Feed Co. v. Bank, 198 Iowa, 1337, 201 N. W. 129.

The case seems to have been fully developed, and it is thought there is no evidence raising an issue for the jury as to whether or not the proceeds of the draft in question belonged to the Hale Company. Provident National Bank v. Cairo Flour Co. (Tex. Civ. App.) 226 S. W. 499; Farmers' State Bank v. Hardie & Co. (Tex. Civ. App.) 230 S. W. 524; West Texas National Bank v. Wichita Mill & Elevator Co. (Tex. Civ. App.) 194 S. W. 835; Howe Grain Co. v. Crouch Grain Co. (Tex. Civ. App.) 211 S. W. 946; Cohen v. First National Bank, 22 Ariz. 394, 198 P. 122, 15 A. L. R. 701; note, 11 A. L. R. page 1060; 7 C. J. 635.

The writer thinks the trial court was correct in directing a verdict for the garnishee and the San Francisco bank.